James Royce STRICKLAND, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–89–00040–CR.

Court of Appeals of Texas, Tyler.

Aug. 9, 1991.

J.M. (Mick) Bandy, Tyler, for appellant.

Michael Sandlin, Dist. Atty's Office, Tyler, for appellee.

COLLEY, Justice.

Appellant appeals his conviction for aggravated robbery. An indictment was returned against the appellant charging that he committed the offense on December 14, 1987. A pretrial competency hearing was conducted on November 30, 1988. The jury selected to determine the competency issue found the appellant competent to stand trial. On January 10, 1989, a different jury found appellant guilty of the charged offense. We will affirm the judgment.

Appellant presents three points of error, claiming that (1) the evidence is factually insufficient to support the competency verdict, (2) the court erred in overruling appellant's motion for continuance of the criminal trial, and (3) the evidence was insufficient to support his conviction. We first consider appellant's first point of error complaining of the factual insufficiency of the evidence to support the jury's negative finding that he was competent to stand trial.

The appellant's first witnesses at the competency hearing were Bobby Foshee and John Brown, who were cell mates of appellant in the Smith County Jail. At the time of the hearing, Foshee had been confined in jail with appellant for about two months. He said he noticed that appellant's behavior was "strange," and that appellant "talks to [himself]." Foshee also testified that "[appellant] can't remember things" and "he talks to the commode." Foshee commented that appellant had "[asked] the commode if he wants to go fishing with him, or hunting with him, stuff like that." Foshee stated that appellant on some occasions remembered Foshee's name, but on other occasions he did not. Foshee also stated that appellant has a weak memory and does not, in his opinion, have "an understanding of why he is in jail and what the proceedings are being brought against him." On cross-examination, Foshee admitted that he had a juvenile and an adult criminal record. Foshee said that appellant described the charges against him as "trumped up...." Foshee said that appellant thought he was charged with "trying to kill police officers ...," and that appellant had that information written down.

Brown testified that he was in jail with appellant for about a month, some two months before the competency hearing. He related that appellant talked to himself many times, "mostly at night." He said that appellant appeared to believe "he had something crawling on him, like trying to get something off of him." Brown stated that appellant didn't know the name of his attorney. On cross-examination, Brown stated that he had never seen appellant "attempt to commit suicide or harm himself." Brown also related that appellant had discussed why he was in jail, and had written the word "lawyer" above his counselor's name on a business card.

After the testimony of those two witnesses, the appellant took the stand. He testified that he knew he was in jail. He stated that he was present in court because "the law and, you know the law enforcement" were "mad at me." He mistakenly identified his counsel as the psychiatrist who previously had examined him. When asked by counsel if he "[understood] why we're here today ...," appellant replied, "No. I guess you want to know why I went down to Mississippi, nothing undercover about it. I was with a friend and we [were] hunting." Appellant recalled that he had attempted to commit suicide "about five or six times." He also remembered being in court earlier with his attorney, and going to the office of the psychiatrist where he saw his attorney.

Following appellant's testimony, his court-appointed counsel gave his own testimony. He testified that the court appointed him on February 22, 1988 to represent the appellant, who was indigent. Counsel stated that he had met with appellant many times, "filed a waiver of arraignment on

March 9 [1988]," and filed a "motion for a psychiatric examination" on the 7th of April, 1988. Defense counsel recalled that when the case was first called for trial on July 5, 1988, appellant "jumped up and apparently went crazy and ran headon into the wall apparently trying to commit suicide." The witness stated that the case was then continued and the court ordered "a psychological examination." Counsel then remarked:

Since that time, [July 5, 1988] I have been unable to communicate with my client, I find that he has no reasonable degree of rational understanding of the proceedings against him. He has no rational or factual understanding at all of what is happening to him.

As I said, I have attempted on numerous times to conduct interviews with [appellant] and have him assist me in the defense of his case. He has total amnesia of any occurrence to which he might be charged. He has in my opinion, no competence to proceed in this matter whatsoever.

.    .    .    .    .

It is my professional opinion as an attorney, that he does not have understanding of the legal proceedings brought against him and again, has not been able to assist me in his defense.

After the foregoing testimony, counsel stated that when he discussed "plea bargaining" with appellant, the response from appellant was that "he would like to be put to death...." In concluding, defense counsel said that appellant has been "completely irrational" during counsel's "dealings" with him. After that testimony, the appellant rested.

The State then called two expert witnesses [1] in rebuttal, Tynus William McNeel, a psychiatrist, and Thomas G. Allen, a psychologist. Both witnesses testified that appellant was competent to stand trial under the standards prescribed by TEX.CODE CRIM. PROC.ANN. art. 46.02 section 1(a) (Vernon 1979). Dr. McNeel testified that he examined appellant on June 1, 1988, and Dr. Allen testified that he examined appellant on July 16 and 17, 1988. Dr. McNeel stated that appellant recalled the facts of his arrest for the offense and told him "about struggling with the lawmen with the pistol...." In regard to that event, McNeel quoted the appellant as telling him "I was trying to kill myself...." McNeel related that appellant also told him in effect, that he would kill himself before going back to prison. McNeel said that although appellant had the ability to cooperate with his attorney in the defense of his case, he was also free to refuse to do so. McNeel surmised from his examination of appellant that the appellant had been "in a mental hospital" while appellant was serving a prison sentence. On re-direct examination, Dr. McNeel classified appellant as a sociopath, that is, one who "seeks to avoid responsibility" for his conduct. However, on recross examination, the witness, after being asked "Are you confident that the [appellant] is mentally competent to stand trial upon your investigation of the matter some six months ago?" answered, "I don't believe I can give an opinion about that today without *examining him.*" Nevertheless, on further questions by the prosecutor, McNeel stated that there was a "strong possibility" that appellant was "faking" symptoms which indicated "some sort of mental illness or mental problem."

Dr. Allen initially described the procedure he followed in his examination of appellant. He stated that these procedures included a "Minnesota Multi-[phasic] Personality Inventory." Allen concluded, based on appellant's true-false answers to the many questions contained in the inventory, that appellant was "trying to fake by looking bad." Allen said that in his opinion, appellant "was trying to appear mentally ill." This witness testified that appellant told him of the robbery accusation pending against him, as well as the fact that he "had a fight" with the arresting officers. Allen then stated that appellant

---

1. These witnesses were appointed by the court pursuant to TEX.CODE CRIM.PROC.ANN. art. 46.02 § 3(a) (Vernon 1979).

told him, "I don't believe I robbed anyone." The witness stated that appellant informed him that at the time when the event occurred he was in Mississippi, hunting. Allen further stated that appellant knew he had a lawyer whose name was on a "business card" in appellant's possession. According to Allen, appellant also identified two other judicial actors, namely, the prosecutor and the judge. Allen related that appellant said he "could cooperate" with his attorney, but was unsure if he could trust him because he was not well acquainted with the lawyer. Later in his direct testimony, Allen stated that appellant had an "anti-social personality." He defined that term as one who is unable to "conform his conduct to social and legal standards, and one who does not learn from experience." He stated that a person with an anti-social personality is one who "would go to great lengths to avoid responsibility for his criminal behavior." Allen said that such a person would "fake mental disease in order to avoid the consequences of his action," and perhaps try to injure himself in the process. In fact, Allen expressed the opinion that appellant was merely "pretending to be mentally ill." Nevertheless, on cross-examination, Dr. Allen, in response to questioning, said that he could not "testify as of today that [appellant] is mentally competent to stand trial." He said, "I can only testify up to the time that I saw him." And, stated "I would have to do another evaluation." Further, on cross-examination, Allen testified as follows:

Q: And your opinion as to the competency of [appellant] is as of July 16th and July 17th, 1988?

A: Is that he is competent.

Q: And as of today, you can't testify in this court whether this man is presently competent or incompetent to stand trial?

A: No. No one can.

■ In assessing the factual sufficiency of the evidence in support of the competency verdict, we now apply the well established standard of review applicable in civil cases. *See Meraz v. State,* 785 S.W.2d 146, 155 (Tex.Cr.App.1990); *also see, White v. State,* 591 S.W.2d 851, 855 (Tex.Cr.App. 1979); *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646 (Tex.1988); *Pool v. Ford Motor Company,* 715 S.W.2d 629, 635 (Tex. 1986); and *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

We begin our analysis of this evidence by noting, as the State argues, that the appellant "is presumed competent to stand trial" and has the burden to prove his incompetency by a preponderance of the evidence. *See* TEX.CODE CRIM.PROC.ANN. art. 46.02 § 1(b) (Vernon 1979).

Here, the real question is whether the jury's negative finding to Special Issue Number 1 is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong. *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646.

The most compelling evidence presented by the appellant at the competency hearing was the testimony of his court-appointed counsel. In rebuttal of that and other testimony adduced by appellant, the State called two expert witnesses, Doctors McNeel and Allen. These witnesses clearly stated to the court and the jury that their opinions were limited to the approximate time of examination of the appellant. Moreover, Dr. Allen opined that no one could give an opinion as to the competency of the appellant to stand trial as of November 30, 1988 without another evaluation conducted closer to the date of the hearing. Dr. McNeel gave similar testimony.

While neither McNeel nor Allen was able to give an opinion that, as of November 30, 1988, appellant was competent to stand trial, each expert did express an opinion that appellant was competent at the time of his examination of appellant. Moreover, each expert testified that appellant was pretending to be both mentally ill and incompetent. Given the statutory presumption of competency, the testimony of both experts that appellant was a sociopath, Allen's testimony that on July 16 and 17, 1988, appellant accurately informed him of the pending accusations against appellant and the factual circumstances surrounding appellant's arrest, coupled with appellant's testimony

by which he attempted to formulate an alibi defense, we are unable to conclude that the jury's failure to find appellant to be incompetent is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong. The jury, who heard all the testimony, and who observed the demeanor of the witnesses, obviously concluded that appellant's pretensions simply deluded his court-appointed counsel and cell mates. Therefore, we will not disturb the verdict. Appellant's first point of error is overruled.

We now turn to consider appellant's second and third points of error. By his second point of error, the appellant argues that the court erred in overruling his oral motion for continuance. The point has no merit because the motion for continuance was not reduced to writing as required by TEX.CODE CRIM.PROC.ANN. art. 29.03 (Vernon 1989). Hence, the court did not abuse its discretion in so ruling. *Smith v. State*, 676 S.W.2d 379, 385 (Tex.Cr.App.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985).

By his third point of error, the appellant challenges the sufficiency of the evidence to sustain his criminal conviction. We must now review the evidence [2] adduced at trial of the criminal cause in the light most favorable to the jury's verdict to determine whether the jurors could have found each element of the aggravated robbery offense to be established beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Webb v. State*, 801 S.W.2d 529, 530 (Tex.Cr.App.1990).

A summary of the State's evidence shows that on December 14, 1987, appellant drove to a convenience store located on State Highway 155 in Smith County, walked into the store, pointed a pistol at the owner-cashier (victim), and demanded

that the victim place monies from the cash register into a bag held by the appellant. The victim in fear of serious bodily injury or death, placed one-hundred and twenty-three dollars ($123.00) in the bag whereupon appellant walked out, got into his car and drove off.

The victim and his employee positively identified appellant as the robber. Additionally, immediately after the commission of the offense, the employee wrote down the license plate number of appellant's car. The ownership of that vehicle was traced to appellant. Moreover, several State witnesses identified the car as the vehicle in which appellant fled the crime scene. At the time of his arrest, 22 days after the robbery, appellant was in possession of the car and a .357 magnum revolver.

Based on our review of the record, we conclude that the evidence is amply sufficient to sustain the guilty verdict. Appellant's third point of error is overruled.

The judgment is affirmed.

---

2. The sufficiency of the evidence is measured by the court's charge, which in part reads:

   Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of December, 1987, in Smith County, Texas, the Defendant, JAMES ROYCE STRICKLAND, while in the course of committing theft of property, and with intent to obtain and maintain control of said property, did intentionally or knowingly threaten or place JUNIOR GILLILAND in fear of imminent bodily injury or death, and that the said Defendant did then and there use or exhibit a deadly weapon, to-wit: a handgun, in the commission of said acts, then you will find the Defendant guilty of aggravated robbery.