Lonnie HORWOOD and David
Lawrence Glass,
Appellants,

v.

WAGNER & BROWN, LTD. and Can-
yon Energy, Inc. D/B/A Canyon
Pipeline Corp., Appellees.

No. 08–98–00234–CV.

Court of Appeals of Texas,
El Paso.

Dec. 9, 1999.

Levon G. Hovnatanian, Feldman & Rogers, L.L.P., Houston, for appellants.

Steven C. Kiser, Lynch Chappell & Alsup A Professional Corp., Midland, for appellees.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## *OPINION*

BARAJAS, Chief Justice.

This is an appeal from an order granting summary judgment based on the statute of limitations. For the reasons stated below, we reverse and remand.

## I. *SUMMARY OF THE EVIDENCE*

This dispute emerged out of gas purchase and gas gathering contracts that were executed on February 15, 1975. The gas purchase contracts involved Wagner & Brown, Ltd.'s predecessor, who was the lessee of oil and gas estates in which Appellants' predecessors owned royalty interests, and several gas purchasers. Under the contracts, the purchasers were obligated to buy gas produced at the well. The gas gathering contracts involved Canyon Pipe Line Corporation ("Canyon") and the purchasers in the gas purchase contracts. Under the gas gathering contracts, Canyon compressed and delivered the gas to a central facility where it was subsequently delivered to the purchasers.

In 1978, the gas purchase contracts were amended. The new provisions in the contracts provided that the base compression fee charged by Canyon was to be deducted from the purchase price of the gas. Because the lease agreement that Wagner & Brown, Ltd.'s predecessor had with the original lessors provided that royalties were to be based on the amount realized from the sale of the gas, the effect of subtracting compression fees from the purchase price was to decrease the amount of royalties paid to the lessors. The provisions adopted in 1978 were incorporated into new purchase and gathering contracts, which were executed in 1984. The 1984 contracts expired sometime in 1995.

Prior to 1985, Appellants received statements from Wagner & Brown, Ltd.'s predecessor indicating that a compression fee of approximately twenty-five cents per one thousand cubic foot ("Mcf") had been charged. This prompted Appellant Glass to hire an independent firm to investigate whether the fees were excessive. Then, in 1985, Appellants' royalty statements indicated that the compression charge had been reduced to approximately twelve cents per Mcf. Larry Glass called Wagner & Brown, Ltd.'s predecessor regarding the new compression charge, and he was told that the charges were in fact only twelve cents per Mcf. In spite of being told that the compression fees were set at a relatively low amount, Appellants argue that from 1985 until sometime in 1995 the actual amount subtracted from the purchase price of the gas was approximately fifty cents per Mcf. Appellants argue that to the extent that these fees were excessive and unreasonable, they should have been included in the purchase price of the gas, the figure used to calculate their royalties.

Appellants brought suit for breach of the express and implied terms of the oil and gas lease, unjust enrichment, an accounting, fraud, and a request for a permanent injunction. In response to these claims, Appellees filed a motion for summary judgment on several grounds, including the statute of limitations. The trial court granted partial summary judgment based on the four-year statute of limitations, disposing of all claims which accrued *prior* to April 9, 1992. Those claims were then severed from the original cause of

action and a final judgment was entered. This appeal follows.

## II. *DISCUSSION*

In Point of Error No. One, Appellants argue that the trial court erred in granting summary judgment based on the statute of limitations because either the discovery rule or the fraudulent concealment rule should have been applied to preserve their claims which dated as far back as 1985. We begin with a discussion of the appropriate standard of review.

### A. Standard of review

■ In a summary judgment context, the standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *See Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Cortez v. Liberty Mut. Fire Ins. Co.,* 885 S.W.2d 466, 469 (Tex.App.—El Paso 1994, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to the required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *See Gibbs v. General Motors,* 450 S.W.2d 827, 828 (Tex.1970).

■ In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *See*

*Nixon,* 690 S.W.2d at 548–49; *DeLuna v. Guynes Printing Co.,* 884 S.W.2d 206, 208 (Tex.App.—El Paso 1994, writ denied). Where the defendants are the movants and they submit summary evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *See Perez,* 819 S.W.2d at 471; *Bradley v. Quality Serv. Tank Lines,* 659 S.W.2d 33, 34 (Tex. 1983); *Cortez,* 885 S.W.2d at 469. Furthermore, when a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex. 1993); *Rogers v. Ricane Enter. Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

### B. Applicable limitations period

■ Appellants' claims are governed by a four-year statute of limitations. *See HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 885 (Tex.1998) (applying four-year statute of limitations to breach of implied covenants claim); *Houston Endowment, Inc. v. Atlantic Richfield Co.,* 972 S.W.2d 156 (Tex.App.—Houston [14th Dist.] 1998, no writ) (applying four-year statute of limitations to claim for breach of the express terms of an oil and gas lease); *Williams v. Khalaf,* 802 S.W.2d 651, 658 (Tex.1990) (applying a four-year limitations period to fraud claims); TEX. CIV. PRAC. REM. CODE ANN. § 16.051 (Vernon 1997) (four-year statute of limitations for actions for an accounting); and *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 164–65 (Tex. App.—El Paso 1997, no writ) (applying a four-year limitations period to claims for unjust enrichment and money had and received).[1] Because Appellants filed suit on

---

1. After summary judgment was issued in this case, the Texas Supreme Court applied a two

April 9, 1996, the trial court granted summary judgment in favor of Appellees on all claims which accrued *prior* to April 9, 1992.

## C. Application of the discovery rule

■■■ When applicable, the discovery rule alleviates the injustice of barring a claimant's cause of action before he learned or, exercising reasonable diligence, could have learned about the facts underlying his right of action. *Clade v. Larsen,* 838 S.W.2d 277, 282 (Tex.App.—Dallas 1992, writ denied) (*citing Robinson v. Weaver,* 550 S.W.2d 18, 23 (Tex.1977) and *Gaddis v. Smith,* 417 S.W.2d 577, 578–79 (Tex.1967)). Two conditions must exist prior to a proper application of the discovery rule: the nature of the injury must be inherently undiscoverable, and the injury must be objectively verifiable. *See HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex.1998). For an injury to be inherently undiscoverable,

> [it] need not be absolutely impossible to discover, else suit would never be filed and the question whether to apply the discovery rule would never arise. Nor does 'inherently undiscoverable' mean merely that a particular plaintiff did not discover his injury within the prescribed period of limitations; discovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it occurred and plaintiff's diligence as well. An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence.

year limitations period to a claim for unjust enrichment. *See HECI Exploration Co. v. Neel,* 982 S.W.2d 881 (Tex.1998). Appellees argue that we should apply a two year *statute* of limitations to Appellants' unjust enrich-

*S.V. v. R.V.,* 933 S.W.2d 1, 7 (Tex.1996) (citing *Computer Associates International, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996)). For an injury to be objectively verifiable, the facts upon which liability is asserted must be capable of being demonstrated through direct physical evidence. *See id.* at 7. The facts upon which liability is premised must not be based merely on expert testimony. *See id.* at 7. Stated differently, "An injury is 'objectively verifiable' if the presence of injury and the producing wrongful act cannot be disputed." *Howard v. Fiesta Texas Show Park, Inc.,* 980 S.W.2d 716, 720 (Tex.App.—San Antonio 1998, no writ).

## 1. Is the nature of Appellants' alleged injury inherently undiscoverable?

It is helpful to begin this inquiry by identifying the nature of Appellants' alleged injury. Essentially, Appellants argue that Appellee Wagner & Brown, Ltd. deducted an unreasonably high processing fee from the purchase price of the gas and then turned it over to their alter ego, Appellee Canyon. Appellants contend that although they received their ⅛ royalty based on what Appellees claim was the true amount realized, the amount realized should have been increased to the extent that the payments to Canyon constituted an unreasonably high processing fee. Thus, by not calculating royalties on what should have been a higher purchase price, Appellants contend that Appellees breached their lease agreement. We must determine whether the nature of Appellees' alleged injury is of the nature that could *not* be discovered within the limitations period despite the exercise of due diligence.

ment and money had and received claims. Appellees have waived this argument, however, by not filing a notice of appeal in accordance with TEX. R. APP. P. 25.1(c).

■■■ Appellants argue that the nature of their injury is inherently undiscoverable insofar as the facts needed to become cognizant of the injury could only have been obtained from Appellees. They argue that Appellees not only failed to provide such facts, but they also concealed them by sending incorrect royalty statements. Appellants' evidence shows that they received monthly statements which reflected a compression charge of approximately twelve to seventeen cents per Mcf. Their evidence further shows that the actual fees received by Canyon were in excess of thirty cents per Mcf. Appellants offered the affidavit of Merle S. Dennis, an individual who has been involved in the natural gas industry since 1979, who explained that the actual compression fees that were given to Canyon could not have determined from the monthly statements. Finally, Appellants' evidence demonstrates that the fees Canyon obtained may not have been reported to any public agency from which Appellants could have obtained the information.

Under these circumstances, the alleged injury suffered by Appellants is within the parameters of an inherently undiscoverable injury because the information that Appellants needed in order to become aware of the injury was obtainable only from Appellees. Additionally, the information forwarded by Appellees to Appellants tended to mitigate any suspicions of excessive fees because the royalty statements indicated that a relatively low compression fee was being assessed. If Appellants' royalty statements revealed the excessive compression fees of which Appellants complain, then the injury certainly would have been discoverable, and the tardiness of this suit would not be excused through the discovery rule. However, under these circumstances of the instant case, the nature of the alleged injury was inherently undiscoverable because the information obtained by Appellants from Appellees revealed the non existence of an injury, giving Appellants no reason to investigate their claims within the limitations period.

At least one other jurisdiction has reached the same conclusion under a similar pattern of facts. In *Houston Endowment, Inc. v. Atlantic Richfield Co.*, 972 S.W.2d 156 (Tex.App.—Houston [14th Dist.] 1998, no writ), Houston Endowment, Inc., ("HEI"), sued Atlantic Richfield Co., ("Arco"), for the underpayment of royalties. HEI alleged that Arco based royalty calculations on 85% of the minerals produced rather than 100%. The trial court granted summary judgment in favor of Arco based on the statute of limitations. On appeal, HEI argued that the trial court erroneously refused to apply the discovery rule. The court of appeals noted that "HEI . . . did not receive detailed accounting showing the basis for the calculation of royalties, and the amount of royalties could not be calculated from the information Arco supplied in its monthly statements." *Id.* at 159. The court determined that HEI's injury was inherently undiscoverable because the royalty reduction was not something that a royalty owner would, through due diligence, discover unless the information was supplied by the working interest owner. *See id.* at 160.

The characterization of the underpayment of royalties as inherently undiscoverable is sound in situations in which the royalty owner's only means to discover his or her injury is through information provided by the lessee. When the lessee provides information which reveals the nonexistence of an injury, thus giving the royalty owner no reason to investigate or discover his or her claim, the inherent undiscoverable nature of the injury is even more evident.

Appellees argue that because the Texas Supreme Court has emphasized that the determination of whether the discovery rule applies in a given case must be made with reference to the type of case, rather than the case itself, we should not invoke the discovery rule here because Appellants' claims are similar to those asserted in *HECI Exploration Co. v. Neel*, 982 S.W.2d 881 (Tex.1998), a case in which the supreme court determined that the discovery rule was not applicable. *See, e.g., Computer Associates International, Inc. v. Altai, Inc.*, 918 S.W.2d at 457 (Tex.1996). In *HECI Exploration Co. v. Neel*, Neel, the owner of a royalty interest, sued HECI, the lessee, for breach of contract, negligent misrepresentation, breach of an implied covenant to protect against drainage, and unjust enrichment. Neel's claims stemmed from a judgment that HECI obtained against the operator of an adjoining tract for having produced oil and gas in a manner that diminished the amount of oil and gas that HECI could recover. Essentially, Neel believed that HECI should have shared the recovery with him and/or informed him of the adjoining operator's misconduct or HECI's suit. Neel did not bring suit until more that four years after the judgment was obtained. HECI was awarded summary judgment and Neel appealed. On appeal, the court inferred an implied duty on the part of HECI to inform the royalty owner of damage caused by a neighboring operator. The court also held that Neel did not have a cause of action to recover royalties because the money that the lessee recovered in his suit against the adjoining operator was not based on value of production, which was the basis for royalty calculations. The court agreed with Neel, however, that the discovery rule should be applied to preserve his other causes of action. Thus, the non-royalty claims were remanded to the trial court. HECI appealed this decision to the Texas Supreme Court, where it was determined that the discovery rule should not apply to an implied covenant to inform the royalty owner of damage to the lease because the lessee's failure to notify the royalty owner is not the type of injury that is inherently undiscoverable. *See id.* at 886. In making this determination, the court noted:

> As owners of an interest in the mineral estate, the [royalty owners] had some obligation to exercise reasonable diligence in protecting their interests. This includes exercising reasonable diligence in determining whether adjoining operators have inflicted damage ... [A] royalty owner should determine whether a common reservoir underlies its lease because it knows or should know that, when there are other wells drilled in a common reservoir, there is the potential for drainage or damage to the reservoir.

*Id.* at 886.

The *Neel* decision is not controlling here. The Texas Supreme Court, in *Neel*, made it clear that the issue on appeal was not whether the non-payment or underpayment of royalties is the kind of case to which the discovery rule should apply. As noted above, the issue of underpayment of royalties was decided in HECI's favor by the court of appeals on grounds other than the statute of limitations, and Neel did not appeal the decision to the Supreme Court. *See id.* at 885. Thus, the *Neel* decision does not stand for the broad proposition that the discovery rule cannot apply to cases involving the non-payment of royalties.

Appellees further contend that we should still find that Appellants' alleged injury was not inherently undiscoverable because Appellants' monthly royalty statements reflected the fact that compression fees affected the amount of royalties and Appellants knew that fees were being

charged. Appellees argue that Appellants did not act with due diligence to prosecute their claims despite having knowledge of the fees. However, the mere fact that Appellants' royalty statements revealed that a compression fee was affecting the royalty payments does not in and of itself establish the discoverable nature of the injury. In fact, if these figures were as Appellants have alleged, they would be indicative of the *absence* of an injury. Essentially, Appellees urge us to determine that Appellants' injury was inherently discoverable because Appellants received statement which indicated that excessive fees *were not being charged.* This, Appellees seem to argue, should have been sufficient to compel a diligent royalty interest owner to investigate whether the compression fees were not as the statements revealed. However, as indicated above, the statements support the opposite conclusion. That is to say, the statements given to Appellants indicate that an injury had not occurred. Under these facts, the nature of Appellants' injury was inherently undiscoverable despite due diligence.

Next, Appellees argue that the discovery rule is not applicable because a number of cases involving disputes between a royalty interest owners and lessees have been tried in which courts have held that the alleged injury was not inherently undiscoverable. *See Shivers v. Texaco Exploration & Prod., Inc.*, 965 S.W.2d 727 (Tex.App.—Texarkana 1998, writ denied) (discovery rule does not apply to claim that lessee failed to inform royalty owner of available income tax credit); *Rogers v. Ricane Enterprises, Inc.*, 930 S.W.2d 157 (Tex.App.—Amarillo 1996, writ denied) (discovery rule does not apply to conversion of oil case when production of the oil was in open view and a matter of public record); *Koch Oil Co. v. B.E. Wilber*, 895 S.W.2d 854 (Tex.App.—Beaumont 1995, writ denied) (discovery rule does not apply to suit for

recovery of unpaid royalties when the plaintiffs knew the royalty payments had ceased, the issue was a matter of public record, and complaint letters had been sent); and *Harrison v. Bass Enterprises Production Co.*, 888 S.W.2d 532 (Tex. App.—Corpus Christi 1994, no writ) (discovery rule does not apply where royalty owner received no royalty payments because facts were available to royalty owner showing production and his own documents revealed the lack of payments). All of these cases, however, are distinguishable from the present case in that they involve situations in which the plaintiff's injury was evident through an inspection of the leased premises or public records. As noted above, such is not the case here.

Having determined that the nature of Appellants' alleged injury is not inherently discoverable, we now turn to the question of objective verification.

### 2. Is Appellants' alleged injury objectively verifiable?

In support of their argument that their injury is objectively verifiable, Appellants cite *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex.1996) where the court stated: "We have adhered to the requirement of objective verification fairly consistently in our discovery rule cases, although we have not always emphasized the requirement because the alleged injury was indisputable." Appellants assert that in this case, the existence of their injury is established through, among other things, the testimony of consultants in the oil and gas industry who have indicated that the rates charged by Appellants for compression is excessive.

Appellees, likewise citing *S.V.* for their support, point to the portion of the opinion in which the Texas Supreme Court announced that "[e]xpert testimony ... did not supply the objective verification of

wrong and injury necessary for application of the discovery rule." *Id.* at 7. Appellees argue that in order for Appellants to prevail, they must rely on expert testimony to prove that the fees charged by Canyon, which allegedly reduced the purchase price of the gas, were excessive. Due to such reliance, Appellees contend that the objective verification element is not met.

■ Although the Supreme Court did emphasize its reluctance to find that the objectively verifiable element was satisfied through mere expert testimony, the court also provided that "[i]t is quite possible that recognized expert opinion on a particular subject would be so near consensus that, in conjunction with objective evidence not based entirely on the plaintiff's assertions, it could provide the kind of verification required." *Id.* at 15. The court also stated that "we have not held that such testimony can never suffice, at least in connection with other evidence . . ." *Id.* at 15. In this case, Appellants would not have to rely solely upon expert testimony to support their claims. It is likely that they will also rely on various financial records that demonstrate the standard charges for other similarly situated producers. The alleged injury in this case can be objectively verified through a combination of expert testimony and financial records.

Having determined that the two elements necessary for the invocation of the discovery rule have been satisfied, we now apply the discovery rule for a determination of whether the statute of limitations bars Appellants' claims.

### D. Does the discovery rule preserve Appellants' claims?

■ When defendants, as movants, rely on the affirmative defense of the running of limitations, as they do in this case, they must establish when the cause or causes of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered in the exercise of reasonable diligence, the elements of his cause of action, or stated another way, the nature of his injury. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990); *Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex.1988); *see also, Martinez v. Humble Sand & Gravel, Inc.,* 860 S.W.2d 467, 470 (Tex. App.—El Paso 1993), *rev'd on other grounds,* 875 S.W.2d 311 (Tex.1994). If the movant cannot do so, a fact question exists about when the limitations period begins to accrue. *Clade v. Larsen,* 838 S.W.2d 277, 282 (Tex.App.—Dallas 1992, writ denied) (citing *Sonenthal v. Wheatley,* 661 S.W.2d 169, 171 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.)); *Kelly v. Dorsett,* 581 S.W.2d 512, 513–14 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.).

Appellees argue that Appellants knew or should have known of their injury as a matter of law more than four years prior to filing suit. Appellees rely primarily on various excerpts from Glass' deposition to support this contention. In the deposition, Glass stated that he was aware of an excessive compression fee in 1983 when he hired an independent firm to investigate the matter. Glass admitted that he did not file suit at that time because he just did not get around to it. Glass also stated that he had not attempted to investigate the compression fees after he was told, in 1984, that the fees were twelve cents. Glass stated that the Appellees did not prevent him from filing his suit earlier. Appellees also assert that evidence of Appellants' receipt of their royalty statements which indicated the existence of a compression fee proves as a matter of law that Appellants either knew or should have

known of their injury upon receipt of the statements.

Appellants argue that Appellees' summary judgment evidence does not establish that there is *no* material issue of fact with regard to when Appellants discovered or through due diligence should have discovered their injury. With regard to the fact that the compression fees appeared on their royalty statements, Appellants argue that the figures that existed on the statements were not sufficient to demonstrate any awareness of a cause of action because the figures were incorrect. With regard to the fact that Glass hired a firm which reported to him in 1983 that the fees may be excessive, Appellants argue that such information was not sufficient to induce a diligent royalty owner to prosecute a claim because *after* Glass received this data he was told by one of Appellees' representatives that the fees were actually only twelve cents per Mcf.

Under these circumstances, we find that Appellees did not meet their burden of establishing that there is no material issue of fact with regard to when Appellants should have learned of the facts that establish their claims. A royalty owner who suspects that he is being overcharged and who is subsequently told by his lessee that the fees are actually set at a reasonable level, does not have adequate cause to investigate the issue further. Due diligence would not have compelled either Appellant to investigate their claims until they had knowledge of facts which suggests that there had been an injury of the nature Appellants have alleged. Here, neither the existence of incorrect compression fee figures on the royalty statements which Appellants believed to be accurate, nor the fact that one of the Appellants suspected that he was being overcharged prior to receiving confirmation from Appellees that he was not being overcharged,

demonstrates that Appellants would have, through due diligence, discovered their claims more than four years before they filed suit. Therefore, summary judgment was improperly granted. Accordingly, we reverse and remand.

Because the alleged injury in this case is inherently undiscoverable and objectively verifiable, and because Appellees have not proven that there is no fact issue regarding to when Appellants discovered or should have discovered their injury, summary judgment was improper and the discovery rule should have been applied to preserve Appellants' claims dating back to 1985. We reverse the trial court's entry of summary judgment and remand this cause to the trial court for proceedings not inconsistent with this opinion.