WAGNER & BROWN, LTD., and Canyon Energy, Inc. d/b/a Canyon Pipeline Corp., Petitioners,

v.

Lonnie HORWOOD and David Lawrence Glass, Respondents.

No. 00–0041.

Supreme Court of Texas.

Argued March 21, 2001.

Decided Aug. 30, 2001.

Rehearing Overruled Nov. 29, 2001.

Harper Estes, Steven C. Kiser, Leslie J. Kramer, Lynch Chappell & Alsup, Midland, Alex Wilson Albright, Austin, Jack Ratliff, Blanco, for Petitioners.

George S. Finley, Smith Rose Finley Harp & Price, San Angelo, Levon G. Hovnatanian, Martin Disiere & Jefferson, Robert Herring, George M. Fleming, Fleming & Associates, Houston, for Respondents.

Justice O'NEILL delivered the opinion of the Court.

In this case, we must decide whether the discovery rule applies to oil and gas royalty owners' claims that the lease operator deducted improper gas gathering and compression charges from the gas purchase price, thus reducing the amount paid as royalties. The court of appeals held that the discovery rule applied to defer accrual of the royalty owners' claims because their

injury was both inherently undiscoverable and objectively verifiable. 61 S.W.3d 1. Because we conclude that the nature of the royalty owners' injury was not inherently undiscoverable, we hold that the discovery rule does not apply. We reverse the court of appeals' judgment and remand the case to that court for further proceedings.

## I. Background

Wagner & Brown, Ltd., leases and operates oil and gas estates in the Conger field in which Lonnie Horwood and David Lawrence Glass own royalty interests. The leases provide that Horwood and Glass are entitled to a one-eighth royalty on the amount realized from the sale of gas at the wells. In 1975, Wagner & Brown's predecessor entered into a gas purchase agreement with Texas Utilities Fuel Company and Lo–Vaca Gathering Company. At the same time, Canyon Energy, Inc., now Wagner & Brown's general partner, contracted with the gas purchasers to gather and compress the gas and deliver it to a central facility, where it was in turn delivered to the purchasers. Under these agreements, as amended, the gas purchasers paid gathering and compression charges to Canyon and deducted these charges from the amount they paid Wagner & Brown for the gas. Because the oil and gas leases provide that royalties are to be paid on the amount realized from the sale of the gas, Canyon's charges reduced the amount of royalties paid to Horwood and Glass.

The royalty statements that Horwood and Glass receive purport to reflect the compression charge that has been deducted from the price of the gas. In 1982, 1983, and most of 1984, the statements reflected a compression charge in the range of twenty-five to thirty cents per mcf (thousand cubic feet). Sometime in

1982, Glass retained an independent firm to investigate the compression charges, and in 1983, the investigator reported that the charges appeared to be excessive. Glass took no legal action at that time. Glass's briefing in this Court attributes his inaction to the fact that he allegedly contacted Wagner & Brown's predecessor to inquire about the charges and was told that, despite what the statements appeared to reflect, the charge was actually only twelve cents per mcf. The record indicates, however, that Glass did not make his inquiry until sometime in 1985, when a drop in the compression charges reflected on the royalty statements to approximately twelve-and-a-half to thirteen cents per mcf apparently renewed Glass's suspicions.[1]

Horwood and Glass filed suit in 1996, contending that Wagner & Brown charged excessive gathering and compression fees to the royalty owners. Horwood and Glass maintain that Wagner & Brown utilized the gathering and compression fees paid to Canyon, with whom it is affiliated, to lessen its royalty obligation and increase its own income. According to Horwood and Glass, Wagner & Brown was thereby unjustly enriched and violated both its express lease obligation to pay royalties on the full amount realized from the sale of gas, and its implied covenant to manage and administer the leases as a reasonably prudent operator.

Wagner & Brown and Canyon moved for summary judgment on a number of grounds, including the affirmative defense of limitations. Horwood and Glass responded that the discovery rule and the fraudulent concealment doctrine deferred accrual of their claims. The trial court rejected these arguments and granted partial summary judgment in favor of Wagner & Brown and Canyon, holding that the four-year statute of limitations barred any claims that accrued before April 9, 1992. The trial court then severed those claims and rendered final judgment against Horwood and Glass. The court of appeals also applied the four-year statute of limitations to Horwood and Glass's claims, but held that the discovery rule applied to defer the accrual of those claims. 61 S.W.3d at 1. The court of appeals reversed the trial court's summary judgment on this basis, and did not consider whether the fraudulent concealment doctrine tolled the statute of limitations as Horwood and Glass also claimed. *Id.* We granted review to consider whether the discovery rule applies to Horwood and Glass's claims.

## II. Discovery Rule

Statutes of limitations are intended to compel plaintiffs to assert their claims "within a reasonable period while the evidence is fresh in the minds of the parties and witnesses." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996). It is in society's best interest to grant repose by requiring that disputes be settled or barred within a reasonable time. *Id.* The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim. *Id.* We have described the discovery rule as "a very limited exception to statutes of limitations," and have condoned its use only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable. *Id.* at 455–56.

An injury is inherently undiscoverable if it is, by its nature, unlikely to be

---

1. Horwood and Glass contend that the compression charges actually deducted from their royalties are greater than the amounts reflected on their statements.

discovered within the prescribed limitations period despite due diligence. *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex.1996) (citing *Altai*, 918 S.W.2d at 456). "Inherently undiscoverable" does not mean that a particular plaintiff did not discover his or her particular injury within the applicable limitations period. *Id.* Instead, we determine whether an injury is inherently undiscoverable on a categorical basis because such an approach "brings predictability and consistency to the jurisprudence." *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex.2001) (citing *S.V. v. R.V.*, 933 S.W.2d at 6); *see also HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex.1998). Accordingly, the question here is not whether Horwood and Glass detected the alleged improper charges and resulting underpayment within the limitations period. Rather, we must decide whether theirs is "the type of injury that generally is discoverable by the exercise of reasonable diligence." *HECI*, 982 S.W.2d at 886.

In *HECI*, we held that the discovery rule did not apply to royalty owners' claims for breach of a purported implied covenant to notify royalty owners of a potential claim against a third party for damage to the common reservoir. 982 S.W.2d at 886. Wagner & Brown and Canyon argue that *HECI* stands for the proposition that all claims for breach of oil and gas lease covenants are categorically exempt from the discovery rule's application. That reading, however, oversimplifies our analysis in *HECI*.

In *HECI*, the plaintiffs, members of the Neel family, owned royalty interests under an oil and gas lease. *Id.* at 884. Their lessee and operator, HECI Exploration Company, discovered that AOP, a producer on an adjoining lease, had damaged the common reservoir by overproduction. *Id.* HECI sued AOP in 1988, and obtained monetary and injunctive relief in the trial court. *Id.* HECI and AOP eventually settled the suit and filed a release of judgment. *Id.* The Neels sued HECI in 1994, more than four years after damage to the reservoir had occurred. *Id.* Among other things, they alleged that HECI violated an implied covenant to notify them of the need to sue AOP. We assumed without deciding that such an implied covenant exists, but held that the statute of limitations barred the claim. *Id.* at 888.

In concluding that the discovery rule did not apply, we focused on whether the *injury* underlying the Neels' failure-to-notify claim—damage to the common reservoir—was discoverable. *Id.* at 886–88. We reasoned that "when the Neels knew or should have known that they had a cause of action against AOP, they knew or should have known that HECI had not told them of that claim." *Id.* at 886. We observed:

> As owners of an interest in the mineral estate, the Neels had some obligation to exercise reasonable diligence in protecting their interests. This includes exercising reasonable diligence in determining whether adjoining operators have inflicted damage. Royalty owners cannot be oblivious to the existence of other operators in the area or the existence of a common reservoir. In some cases, wells visible on neighboring properties may put royalty owners on inquiry. In any event, *a royalty owner should determine whether a common reservoir underlies its lease because it knows or should know that, when there are other wells drilled in the reservoir, there is the potential for drainage or damage to the reservoir.*

*Id.* at 886 (emphasis added). We noted that several sources of information about the existence of a common reservoir and operations in it were available to the royalty owners, including Railroad Commission

and lessee records. *Id.* at 886–87. Because we concluded that damage to the common reservoir was not inherently undiscoverable, we held that neither was the lessee's failure to notify the Neels of their potential claims. *Id.* at 887. Thus, the category of claims *HECI* governs is not all alleged breaches of implied or express oil and gas lease covenants, but claims arising from damage to an oil and gas reservoir.

In this case, Horwood and Glass's injuries do not arise from any damage to the reservoir, but from the underpayment of royalties. Nevertheless, *HECI*'s analysis guides our inquiry here. As royalty owners, Horwood and Glass have "some obligation to exercise reasonable diligence in protecting their interests." *Id.* at 886. Royalty owners may not rely on implied covenants to "dispense with the need ... to exercise due diligence in enforcing their contractual rights." *Id.* at 887. Just as a royalty owner should determine whether operations in a common reservoir are harming its interests, *id.* at 886, a royalty owner should exercise due diligence to determine whether charges made against royalty payments are proper and reasonable.

■■■■ As in *HECI*, the royalty owners here could turn to the lessee for information. *See HECI*, 982 S.W.2d at 886. Since 1986, section 91.504 of the Texas Natural Resource Code has required parties paying royalties to explain, upon a royalty owner's request, any deductions or adjustments that are not explained on check attachments. Section 91.505 requires a lessee to respond to requests made by certified mail within thirty days of receiving the request. Horwood and Glass discount the lessee as an information source because, when Glass inquired about the charges reflected on his royalty statements in 1985, he was assured, allegedly falsely, that they were only twelve cents per mcf.

But this alleged misrepresentation is irrelevant to our discovery-rule analysis, which, as we have stated, is categorical, not case-specific. *HECI*, 982 S.W.2d at 886. If Wagner & Brown fraudulently misrepresented or concealed facts forming the basis of Horwood and Glass's injury, which we do not decide, then limitations may, indeed, have been tolled. But the discovery rule exception and tolling based on fraudulent concealment are distinct concepts that exist for different reasons. *See Altai*, 918 S.W.2d at 456. The fraudulent concealment doctrine, unlike the discovery rule, resembles equitable estoppel. *Id.; see S.V. v. R.V.*, 933 S.W.2d at 4 (discussing decisions regarding fraudulent concealment). The fact that a lessee allegedly misrepresented information in a particular case may be relevant to the equitable principles involved in a fraudulent concealment analysis, but it does not affect the categorical determination of inherent undiscoverability in a discovery rule analysis.

Horwood and Glass argue, and the court of appeals agreed, that their injury is inherently undiscoverable because Wagner & Brown, which issued the royalty statements, was the sole source of information about the contested fees. They argue that, unless information about an injury is available from a public source, a plaintiff cannot, in an exercise of due diligence, be expected to discover the injury. Horwood and Glass cite *HECI* to support their argument that information must be publicly available to be inherently discoverable, but their reliance on that case is misplaced. Although we noted in *HECI* that information about the oil reservoir was available from several sources, including public records at the Railroad Commission, 982 S.W.2d at 886, it does not follow, and we did not imply, that an injury is inherently undiscoverable if it cannot be detected by examining public records. As we have

said, royalty owners may seek information necessary to assess the propriety of royalty calculations from the lessee. In the present case, Horwood and Glass could have additionally sought information about post-production charges from Canyon and the gas purchasers. Thus, there were several sources of information available to Horwood and Glass from which they could have discovered the propriety of post-production charges.

Horwood and Glass claim that royalty owners should not bear the burden of discovering injuries of the sort asserted here. But expecting parties to discover improper charges like those alleged in this case is no more onerous than expecting software companies to detect the theft of trade secrets. In *Altai*, we concluded that parties can generally detect trade secret misappropriation within the statute of limitations period. *Altai*, 918 S.W.2d at 457. In doing so, we relied on the fact that companies take extensive precautions to protect intellectual property. *Id.* at 456–57. We noted that, in a world of high employee mobility in which information flows easily, it is not unexpected for employees to go work for a competitor and take trade secrets with them. *Id.* at 457. Considering the realities of the software industry, we stated that companies should be suspicious when a competitor markets a similar product after a former employee begins working for the competitor. *Id.* Just as a software company could suspect that its proprietary information may have been misappropriated from its competitor's introduction of a similar product, those who receive statements listing fees charged should be alerted to the need to perform additional investigation to protect their interests. And that is exactly what happened in this case. Glass in fact hired a consultant in 1982 to investigate the fees charged, and that consultant used the statements and other information to determine that Glass had been overcharged.

In sum, we cannot say that injuries caused by excessive or improper charges resulting in the underpayment of royalties are inherently undiscoverable. Horwood and Glass's injury is the type that could have been discovered with reasonable diligence; therefore the discovery rule does not apply to defer accrual of their claims. Because we hold that the injury Horwood and Glass allege is not inherently undiscoverable, we need not consider whether it is objectively verifiable.

### III. Unjust Enrichment

In the trial court, Wagner & Brown and Canyon argued that the two-year statute of limitations should apply to the unjust enrichment claim. Nevertheless, the trial court applied the four-year limitations period, and Wagner & Brown and Canyon did not file a notice of appeal. While Horwood and Glass's appeal was pending, we issued our *HECI* opinion in which we noted that a two-year statute governed unjust enrichment claims. *HECI*, 982 S.W.2d at 885. Relying on *HECI*, Wagner & Brown and Canyon argued to the court of appeals that the appropriate limitations period was two years, but the court of appeals held that their argument was waived. 61 S.W.3d 1. Wagner & Brown and Canyon claim this holding was erroneous. We disagree.

Under Rule 25.1(c) of the Texas Rules of Appellate Procedure, a party that seeks to alter the trial court's judgment must file a notice of appeal. Wagner & Brown and Canyon argue that they had no basis for appealing the trial court's unjust enrichment decision until this Court applied the two-year statute in *HECI*; therefore, they had just cause for not filing a notice of appeal. But Wagner & Brown and Canyon's summary judgment motion ac-

knowledged that the courts of appeals were divided about the appropriate limitations period for unjust enrichment claims. As a result, their argument that they had no basis for appealing the trial court's decision is untenable. We agree with the court of appeals that Wagner & Brown and Canyon did not preserve their right to appeal the trial court's application of the four-year limitations period to Horwood and Glass's unjust enrichment claims.

## IV. Conclusion

We hold that the injuries alleged in this suit are not by their nature inherently undiscoverable, and the discovery rule does not apply. We therefore reverse the court of appeals' judgment, and remand the case to that court for further proceedings.