

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00365-CV

BIENES RAICES VENTURES, LP                                    APPELLANT

V.

FIRST FINANCIAL BANK, N.A.                                    APPELLEE

----------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 236-268524-13

----------

## MEMORANDUM OPINION[1]

----------

This is an appeal from a summary judgment.  Appellant Bienes Raices

Ventures, LP (Ventures) sued Appellee First Financial Bank, N.A. for negligence

and breach of contract.  The trial court granted summary judgment for First Bank

on limitations grounds.  In three issues, Ventures argues that the trial court erred

by granting summary judgment for First Bank on Ventures's claims and by

---

[1]See Tex. R. App. P. 47.4.

denying partial summary judgment for Ventures on its breach of contract claim. Because we hold that the trial court did not err, we affirm.

## Background

In August 2007, Ventures executed a promissory note with First Bank and a construction contract with another party, Chateau Home Builders, Ltd. (Builder). The three parties also executed a Tri-Party Construction Loan Agreement Disbursement Disclosure Agreement (the disbursement disclosure agreement). Under the disbursement disclosure agreement, the parties acknowledged that Ventures had borrowed $872,841.76 from First Bank for construction of a home by Builder and that the total amount to be paid to Builder was $875,000. Under that agreement, First Bank would follow a specific procedure and use specific forms relating to the advances it made under the agreement, including obtaining written verifications of progress made by Builder and disclosing those verifications to Ventures before advancing any funds.

Builder failed to complete the home within the twelve months specified in the agreement. Instead, Builder sent Ventures an email stating that an additional $40,000 was required to complete the home, that over $34,000 in suppliers were yet to be paid, and that Builder could not pay for appliances that had yet to be delivered.

Ventures sued First Bank on September 30, 2013. Ventures alleged that First Bank had failed to comply with the contractual procedures set out in the disbursement disclosure agreement, relying instead on telephonic

representations by Builder about how much work it had completed. Ventures contended that the representations by Builder were false.

Ventures alleged that First Bank failed to retain ten percent of Builder's draws as required by property code section 53.101 and that instead, as Ventures took steps to complete the work and pay contractors, First Bank demanded that Ventures sign an additional loan for $107,052.86. After Ventures did so, it discovered Builder's overdraws and filed suit. Ventures attached to its petition a copy of the disbursement disclosure agreement.

Both parties filed motions for summary judgment. Ventures filed a motion for partial summary judgment on its breach of contract claim. First Bank filed a motion for summary judgment on all of Ventures's claims on the ground that the applicable limitation period for each claim had passed before the suit was filed.

First Bank also attached a letter, dated August 21, 2007, and signed by an officer of the bank and by Nathan Graves, sole member of Ventures's general partner. The letter confirmed that Graves had given verbal authorization for First Bank to process all draw requests by Builder. It stated that when First Bank received a request for a disbursement, it would verify by either periodic inspection or telephone conversation how much work had been completed. In Ventures's response to First Bank's motion, it raised the discovery rule.

After a hearing, the trial court signed a final summary judgment ordering that Ventures take nothing by its suit.

**Standard of Review**

A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[2] A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[3] To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense.[4]

We review a summary judgment de novo.[5] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[6] We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[7] The summary judgment will be affirmed only if the record establishes that the

---

[2]*See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

[3]*Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

[4]*See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

[5]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[6]*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[7]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[8]

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[9] The reviewing court should render the judgment that the trial court should have rendered.[10]

## Discussion

In Ventures's first issue, it argues that the trial court erred by denying it summary judgment on its breach of contract claim. In its second issue, it argues that the trial court erred by granting summary judgment for First Bank on the ground of limitations on Ventures's negligence and negligence per se claims. In Ventures's third issue, it asserts that the trial court erred by granting summary judgment for First Bank on the ground of limitations on Ventures's breach of contract claim. We consider Ventures's second and third issues together, and we address them first.

---

[8] *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[9] *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009).

[10] *Mann Frankfort*, 289 S.W.3d at 848.

5

Ventures did not expressly raise the discovery rule in its pleadings or summary judgment motion. The only parts of its pleading that could constitute a reference to the rule are a statement that its claims were timely filed and a statement (arguably contradicted earlier in its pleading) that it was only after September 30, 2009, that it discovered the breach of contract and negligent over-advancement.[11] The first time Ventures specifically asserted the applicability of the discovery rule was in its response to First Bank's summary judgment motion. Even if the statements in its pleadings did not raise the discovery rule, however, First Bank raised the issue in its answer and its summary judgment motion and attached evidence to the motion to negate it. Accordingly, the issue of whether the discovery rule applies was before the trial court and is therefore before this court.[12]

The limitation period for a negligence claim is two years.[13] The limitation period for a breach of contract claim is four years.[14] This suit was filed on

---

[11]*See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (stating that a defendant need not negate the discovery rule if the plaintiff does not plead it); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) ("A matter in avoidance of the statute of limitations that is not raised affirmatively by the pleadings will . . . be deemed waived.").

[12]*See Via Net*, 211 S.W.3d at 313 ("When Safety Lights asserted the discovery rule for the first time in its summary judgment response, Via Net had two choices: it could object that the discovery rule had not been pleaded, or it could respond on the merits and try the issue by consent.").

[13]Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (West Supp. 2014).

[14]*Id.* § 16.051 (West 2015).

September 30, 2013. As a defendant seeking summary judgment on the affirmative defense of limitations, First Bank had the burden to establish as a matter of law that Ventures's negligence claims accrued more than two years before September 30, 2013, and that Ventures's breach of contract claim accrued more than four years before September 30, 2013.[15] And, once the discovery rule was put at issue in the trial court, First Bank also had the burden of negating the applicability of the discovery rule.[16]

The limitation period starts running when a claimant learns of a wrongful injury, even if the claimant does not yet know the cause of the injury, the full extent of the injury, or who is responsible.[17] The discovery rule applies to delay the running of the limitation period when the injury complained of is inherently undiscoverable.[18] An injury is inherently undiscoverable if it is unlikely to be discovered within the prescribed limitation period despite due diligence.[19]

The injuries alleged by Ventures were that it had to pay more than the contracted-for amount to complete the home and that because the home was not

---

[15] *See Chau*, 254 S.W.3d at 455.

[16] *See Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 782 (Tex. 2007) (observing that once a plaintiff has pled the discovery rule, the defendant must negate it).

[17] *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2011).

[18] *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997).

[19] *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).

completed on time, it had to pay more in interest than it should have had to, the home lost value, and it suffered loss of the use of the home.

To its summary judgment motion, First Bank attached a copy of the disbursement disclosure agreement, which called for First Bank to disburse to Builder up to $875,000 using the procedures outlined in the agreement. It obliged Builder to complete the house within twelve months.

First Bank also attached an email from an employee of Builder, dated November 5, 2008, stating that Builder had already spent on construction more than the loan amount. The email further stated that an agreed-upon completion date of November 15, 2008 was "not realistic." This email was in response to an email from a vice president of Ventures, also attached to First Bank's motion, which stated that Ventures wanted the house completed on schedule by the November deadline or it would have to pursue its legal rights under the construction contract.

Another November 2008 email from the same Ventures vice president acknowledged that Builder had not completed the house and would not be doing so. A November 2008 email from a First Bank employee to Ventures's vice president stated that the loan had been fully funded. The emails referenced a second loan taken in September 2008 to fund the construction of a swimming pool and for other upgrades to the house and stated that the outstanding bills plus construction work still to be completed would take more than the remaining funds.

8

Ventures's summary judgment response attached depositions of the First Bank employee who approved the disbursements and of Graves, and the testimony in these depositions also showed that all of the funds of the original loan were disbursed by First Bank as of May 2008, and all of the funds of the additional September 2008 loan were disbursed as of November 2008. After November 2008, Ventures took over supervising the construction and paying contractors.

Accordingly, the summary judgment evidence showed that there was no issue of material fact about whether, by November 2008, Ventures knew that the house had not been completed on time and that despite the non-completion, all of the funds that First Bank was to disburse under the loan and the disbursement disclosure agreement had already been paid out to Builder. Accordingly, as of that time, Ventures knew of its injury.

Ventures cites to *Horwood v. Wagner & Brown, Ltd.* for the proposition that an injury is undiscoverable when the information needed to discover the injury can only be obtained from the party causing the injury.[20] *Horwood* was reversed by the Supreme Court of Texas, a fact not noted by Ventures in either its opening brief or its reply brief.[21] But even were we to agree with the reasoning of the

---

[20]61 S.W.3d 1, 6 (Tex. App.—El Paso 1999), *rev'd*, 58 S.W.3d 732 (Tex. 2001).

[21]*See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001) (reversing the court of appeals and stating that there were other sources of information from which the appellees could have discovered their injury).

court of appeals in *Horwood*, it is inapplicable—Ventures knew of its injury in November 2008, even if it did not know then the full extent of the injury or who was responsible.

Ventures also cites to *Chemd Inc. v. KPMG Peat Marwick, L.L.P.* for the proposition that the complicated nature of the injury made its discovery inherently undiscoverable.[22]  It contends that it took a certified public accountant and a lawyer analyzing the records to uncover the injury.  *Chemd*, which was not designated for publication and has no precedential value, does not help Ventures.  In *Chemd*, the Dallas court of appeals discussed the Supreme Court of Texas case *Murphy v. Campbell*.[23]  It noted that under *Murphy*, because it is unlikely that a lay person would know that the tax advice the person is receiving is faulty, an injury from accounting malpractice is inherently undiscoverable; "the very reason a client seeks expert advice in tax matters is because such matters are often not within the average person's common knowledge."[24]  But here, as we have stated, Ventures did know of its injuries.  First Bank produced evidence establishing that, in 2008, Ventures was aware that the house had not been completed on time, that the money borrowed from First Bank for the construction had been disbursed, and that Builder did not have the money to complete the

---

[22]No. 05-00-00816-CV, 2001 WL 893989, at *4 (Tex. App.—Dallas Aug. 9, 2001, pet. denied) (not designated for publication).

[23]964 S.W.2d 265, 270 (Tex. 1997).

[24]*Chemd, Inc.*, 2001 WL 893989, at *4.

10

work. Ventures produced no evidence raising a fact issue about its knowledge of those facts.

Ventures further argues that the disbursement disclosure agreement was a continuing contract, and therefore the claim for breach of contract did not accrue until the contract had been completed, which it contends occurred when a new loan agreement was signed in September 2009. We disagree. Even assuming that the disbursement disclosure agreement was a continuing contract, limitations run on a continuing contract when work is completed, it terminates by its own terms, or the contract is anticipatorily repudiated by one party and the repudiation is accepted by the other party.[25] First Bank's evidence showed that in 2008, Builder disclosed that it would not be finishing the construction on time and that First Bank had disbursed all the money that was supposed to be paid out to Builder. Ventures then assumed responsibility for completing the construction. Thus, by November 2008, Builder had repudiated its contractual responsibilities, Ventures had taken over, and, having advanced all of the funds, there was nothing left for First Bank to disburse under the disbursement disclosure agreement.

Accordingly, we hold that the summary judgment evidence demonstrated that the discovery rule does not apply, that the limitation period began to run in November 2008, and that therefore Ventures's claims were barred by the

---

[25] *Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379, 382 (Tex. App.—Fort Worth 1994, writ denied).

11

applicable statutes of limitation. We consequently hold that the trial court did not err by granting summary judgment on Ventures's breach of contract and negligence claims. We overrule Ventures's second and third issues.

Because we have held that the trial court did not err by granting summary judgment for First Bank on the basis of limitations, we further hold that the trial court did not err by denying partial summary judgment for Ventures. We overrule Ventures's first issue.

Having overruled all of Ventures's issues, we affirm the trial court's summary judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DELIVERED:  June 18, 2015

12