

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

November 2, 2005

The Honorable Greg Lowery
Wise County Attorney
Wise County Courthouse, Room 300
Decatur, Texas 76234

Opinion No. GA-0370

Re: Whether a statutory county court judge may recover back pay from the county, which failed to pay the judge the salary to which the judge was entitled under Government Code section 25.0005 (RQ-0341-GA)

Dear Mr. Lowery:

On behalf of the Wise County Commissioners Court (the "Commissioners Court"), you ask whether a statutory county court judge may recover back pay from Wise County (the "County"), which failed to pay the judge the salary to which the judge was entitled under Government Code section 25.0005.[1] Your question has two parts. You ask first whether the judge "should be held to have knowledge of nonpayment of his complete salary," which the Commissioners Court should have set in accordance with section 25.0005, "from the date the county initially collected the funds or from the date the Judge became aware the funds were not being paid to him." Request Letter, *supra* note 1, at 1. You ask second whether governmental immunity bars the judge from recovering from the County. *See id.*

## I. Relevant Statutes

Your questions involve companion statutes, Government Code sections 51.702 and 25.0005. Section 51.702 authorizes a commissioners court annually to authorize the county clerk to collect "a $40 filing fee in each civil case filed in the [statutory county] court to be used for court-related purposes for the support of the judiciary" and "$15 as a court cost on conviction of any criminal offense in a statutory county court."[2] TEX. GOV'T CODE ANN. § 51.702(a), (b), (f) (Vernon 2005).

---

[1]*See* Letter from Thomas J. Aaberg, Assistant County Attorney for Honorable Greg Lowery, Wise County Attorney, to Honorable Greg Abbott, Texas Attorney General (Apr. 28, 2005) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]Attorney General Opinion DM-123, issued in 1992, concluded that section 51.702(b), which imposes a $15 court cost on conviction of a criminal offense, violates both the due process and the equal protection guarantees of the federal constitution. *See* Tex. Att'y Gen. Op. No. DM-123 (1992) at 4. In 1999, in Opinion JC-0098, this office

(continued...)

The clerk must send the fees and costs collected under section 51.702 to the state comptroller, who deposits them in the judicial fund. *See id.* § 51.702(d); *see also* TEX. LOC. GOV'T CODE ANN. §§ 133.003(4), .004(4), .051, .052(b), .055(a), .058(d)(1) (Vernon Supp. 2004-05) (providing for the deposit and remission of the fees and costs collected under Government Code section 51.702). The judicial fund, a separate fund in the state treasury, may be used "only for court-related purposes for the support of the judicial branch of this state." TEX. GOV'T CODE ANN. § 21.006 (Vernon 2004).

Section 25.0005 sets the salary of a statutory county court judge in a county that collects fees and costs under section 51.702:

> (a) A statutory county court judge . . . in whose court fees and costs under Section[] 51.702(a) and (b) are . . . collected[] shall be paid a total annual salary set by the commissioners court at an amount that is at least equal to the amount that is $1,000 less than the total annual salary received by a district judge in the county on August 31, 1999. A district judge's or statutory county court judge's total annual salary includes contributions and supplements, paid by the state or a county, other than contributions received as compensation under Section 74.051 [regarding compensation for a presiding judge].
>
> . . . .
>
> (e) A county is not required to meet the salary requirements of Subsection (a) for a particular court if:
>
> (1) not later than September 1 of the year in which the county initially begins collecting fees and costs under Section[] 51.702 . . . , the county increases the salary of each statutory county

---

[2](...continued)
indicated that Opinion DM-123 correctly states and applies "the law established by the Texas Court of Criminal Appeals and lower courts of appeals on the constitutionality of criminal penalty statutes." Tex. Att'y Gen. Op. No. JC-0098 (1999) at 3. As Opinion JC-0098 further states, however, "approximately two months after . . . Opinion DM-123 was issued," the 78th district court issued a judgment declaring "section 51.702 constitutional in its entirety." *Id.* (citing *In re Dorsey Trapp*, No. 139568-B (78th Dist. Ct., Wichita County, Tex., Aug. 24, 1992)). According to Opinion JC-0098, the district court's "contrary decision" thus "constrain[s]" Opinion DM-123. *Id.* at 4. Nevertheless, as Opinion JC-0098 continues,

> the [district] court did not expressly overrule DM-123 or otherwise cite authority for its conclusions. Accordingly, the scope of the issues actually litigated and resolved in the declaratory action is unclear. Furthermore, without such clarity, it is impossible to evaluate the trial court's determination in light of the existing judicial precedent from our state's appellate courts.

*Id. But see Rylander v. Caldwell*, 23 S.W.3d 132, 139 (Tex. App.–Austin 2000, orig. proceeding [mand. denied]) (declining to consider section 51.702(b)'s constitutionality). We assume, for purposes of this opinion, that section 51.702(b) is constitutional.

court judge in the county to an amount that is at least $28,000 more than the salary the judge was entitled to on May 1 of the year the county initially begins collecting fees and costs under Sections 51.702 . . . ;

> (2)  the county pays at least the salary required by Subdivision (1);

> (3)  the county collects the fees and costs as provided by Section[] 51.702 . . . ;

> (4)  the court has at least the jurisdiction provided by Section 25.0003 [defining a statutory county court's jurisdiction]; and

> (5)  [although the county need not pay a salary that exceeds the minimum salary set under subsection (a)], the county uses at least 50 percent of the amount the county receives each state fiscal year under Section 25.0016 for salaries for the statutory county court judges.

*Id.* § 25.0005(a), (e).

Under section 25.0015, the state annually returns to the county a portion of the fees and costs that the county clerk collected and remitted to the comptroller under section 51.702. *Id.* § 25.0015(a). The purpose of the payment from the state is to assist the county with paying the statutory county court judge's increased salary:

> (a) Beginning on the first day of the state fiscal year, the state shall annually compensate each county that collects the additional fees and costs under Section[] 51.702 . . . in an amount equal to $35,000 for each statutory county court judge in the county who:

> > (1)  does not engage in the private practice of law;

> > (2)  presides over a court with at least the jurisdiction provided by Section 25.0003; and

> > (3)  except as provided by Section 25.0005(d) [providing that higher minimum salaries provided by specific statutes prevail over section 25.0005's minimums], is not excluded from the application of Section 25.0003 or Section 25.0005.

> (b) For a county that participates under Section 51.702(f) under a resolution adopted . . . before September 1, 2003, the amount

> shall be paid to the county's salary fund in equal monthly installments, and of each $35,000 paid a county, $30,000 shall be paid from funds appropriated from the judicial fund, and $5,000 shall be paid from funds appropriated from the general revenue fund.

*Id.* § 25.0015(a)-(b). In addition, under section 25.0016, to the extent the fees and costs the comptroller receives from all counties under section 51.702 exceed the amount returned to the counties under section 25.0015, the state must "remit the excess to the counties proportionately based on the percentage of the total paid by each county." *Id.* § 25.0016(a). Consistently with the purpose of monies placed in the state judicial fund under section 51.702, a county may use its proportionate share of the excess received under section 25.0016 "only for court-related purposes for the support of the judiciary . . . ," which may include judges' salaries. *Id.* § 25.0016(b); *see* Tex. Att'y Gen. Op. No. JC-0158 (1999) at 3 (stating that, while neither section 25.0016 nor section 21.006 defines the phrase "court-related purposes for the support of the judicial branch," permissible purposes include salaries related to the operation of the courts); *cf.* Tex. Gov't Code Ann. § 21.006 (Vernon 2004) (creating the judicial fund in the state treasury as a separate fund and limiting its use to only "court-related purposes for the support of the judicial branch of this state").

## II.    Facts

You inform us that the Commissioners Court resolved in 1994 to collect fees under Government Code section 51.702.[3] *See* Request Letter, *supra* note 1, at 1; *see also* Tex. Gov't Code Ann. § 51.702(a), (b) (Vernon 2005). The Commissioners Court did not, however, "utilize the funds" in accordance with section 25.0005. Request Letter, *supra* note 1, at 1. You indicate that the County should have complied with section 25.0005 when it "received funds from the State" beginning in 1996, but it did not. *Id.* at 2. The individual who has held the position of statutory county court judge continuously since at least 1994 "did not find out about the [County's] noncompliance until 2003[,] and the . . . [Commissioners Court] corrected the situation at that time." *Id.* The judge now would like to receive back pay for the years 1996 through 2003. *See id.* We understand that the amount of back pay the judge seeks is $269,000.[4] You do not inform us of the use or uses to which the County put the funds received from the state under section 25.0015 or excess funds received under section 25.0016.[5] *See generally id.*

---

[3]The request letter refers to fees collected under Government Code section 51.072, rather than section 51.702. *See* Request Letter, *supra* note 1, at 1. There is no section 51.072. Furthermore, section 51.702 provides for the fees that must be utilized under Government Code section 25.0005, which you also cite. *See* Tex. Gov't Code Ann. § 51.702(k) (Vernon 2005); *see also id.* § 25.0005(a) (Vernon 2004); Request Letter, *supra* note 1, at 1. We therefore assume that you mean to refer to section 51.702.

[4]*See Cude Seeks Re-election,* Wise County Messenger, June 26, 2005, available at www.wcmessenger.com/newsbindata/news/news/Cudeseeksre-election.shtml.

[5]As this office previously has suggested, a county's use of fees, such as those collected under section 51.702, for the government's general revenue purposes violates article I, section 13 of the Texas Constitution, which guarantees that state courts shall be open. *See* Tex. Const. art. I, § 13 ("All courts shall be open . . . ."); Tex. Att'y Gen. Op. No. GA-0340 (2005) at 3. The Texas Supreme Court has construed this provision to "guarantee access to the courts
(continued...)

## III.     Legal Analysis

### A.     General

This office's prior decisions indicate that in this situation a statutory county court judge is entitled to receive the salary required by section 25.0005(a) from September 1 of the year the county began collecting fees and costs under section 51.702. *See* Tex. Att'y Gen. Op. Nos. JC-0543 (2002) at 7-8; JC-0159 (1999) at 4; JC-0157 (1999) at 2-3. Although you do not indicate whether the County intended to set the statutory county court judge's salary in compliance with subsection (a) or subsection (e) of section 25.0005, this office has determined that a county that does not comply with subsection (e) must pay the salary set in subsection (a). *See* Tex. Att'y Gen. Op. Nos. JC-0543 (2002) at 6; JC-0159 (1999) at 3. Thus, the "judge should receive from the County the difference between the amount he or she received and the amount the judge should have received under subsection (a)." Tex. Att'y Gen. Op. No. JC-0543 (2002) at 7. But our prior decisions do not address the applicability of the statute of limitations or governmental immunity.

### B.     Statute of Limitations

You ask first which limitations period applies to the judge's request for back pay. *See* Request Letter, *supra* note 1, at 2. You suggest that the judge's action is "for debt" and that the four-year statute of limitations set out in section 16.004 of the Civil Practice and Remedies Code therefore applies. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (Vernon 2002). Under section 16.004, a person must file an action for debt "not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (Vernon 2002).

This office considered an analogous issue in 2000, in Opinion JC-0182. *See* Tex. Att'y Gen. Op. No. JC-0182 (2000) at 1. The opinion addressed a situation in which three Fort Bend County Court at Law judges had been paid not on an annual basis but on an hourly basis for several years; as a result, each of the three judges was under-compensated. *See id.* at 1-2. One of the judges suggested that the statute of limitations prevented the judges from claiming more than four years of back pay. *See id.* at 2. The opinion agrees, concluding "that the four-year statute of limitations for causes of action based upon debt . . . applies to the judges' claims." *Id.* at 3; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (Vernon 2002). The opinion pointed out, however, that "a statute of limitations does not bar the judges from recovering the full amount the county owes them unless the county raises a limitations statute as a defense." Tex. Att'y Gen. Op. No. JC-0182 (2000) at 3. If the county does not "affirmatively plead the statute of limitations, it waives the defense, . . . and the judges may recover all of the unpaid salaries." *Id.*

---

[5](...continued)
unimpeded by unreasonable financial barriers," such as "filing fees to support the state's general revenue" or fees that are available to local governments to build roads and schools. *State v. Flag-Redfern Oil Co.*, 852 S.W.2d 480, 485 (Tex. 1993); *see LeCroy v. Hanlon*, 713 S.W.2d 335, 341-42 (Tex. 1986); *Farabee v. Bd. of Trs., Lee County Law Library*, 254 So. 2d 1, 5 (Fla. 1971) (quoted in *LeCroy*, 713 S.W.2d at 342). Thus, although filing fees and court costs usually are constitutional, *see LeCroy*, 713 S.W.2d at 342, court fees that are used for general revenue purposes instead of court-related purposes violate the constitution. *See* Tex. Att'y Gen. Op. No. GA-0340 (2005) at 3.

Consistently with Opinion JC-0182, we conclude that the judge's request for back pay is an action for debt and is subject to the four-year statute of limitations that section 16.004(a)(3) of the Civil Practice and Remedies Code sets forth.

The judge's counsel argues that the discovery rule exception should apply, deferring the judge's cause of action until he knew or, "by exercising reasonable diligence," should have known of the facts giving rise to the claim.[6] *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). According to the Texas Supreme Court, the discovery rule is "a very limited exception" to a statute of limitations and should be used "only when the nature of the plaintiff's injury is *both* inherently undiscoverable *and* objectively verifiable." *Id.* (emphasis added). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* at 734-35. A court will determine whether an injury is inherently undiscoverable "on a categorical basis," examining whether the alleged injury is "'the type of injury that generally is discoverable by the exercise of reasonable diligence.'" *Id.* at 735 (quoting *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)).

Whether a particular type of injury is a type that generally is not discoverable by the exercise of reasonable diligence and therefore inherently undiscoverable is a question requiring the resolution of fact questions and is beyond this office's purview. *See* Tex. Att'y Gen. Op. No. GA-0156 (2004) at 10 (stating that fact questions cannot be answered in the opinion process). Nevertheless, a 1949 case, *Falls County v. Mires*, suggests that the judge's injury here is the kind that may be discovered by the exercise of reasonable diligence and is not inherently undiscoverable. *See Falls County v. Mires*, 218 S.W.2d 491, 494 (Tex. Civ. App.–Waco 1949, writ ref'd), *superseded in part by statute as noted in* Tex. Att'y Gen. Op. No. JC-0182 (2000) at 3. In *Falls County*, the Waco court of civil appeals indicated that a county officer should be held to have knowledge of statutory salary requirements related to the officer's position. *See Falls County*, 218 S.W.2d at 494. The parties stipulated that a county treasurer had for several years been paid less than the annual salary to which he was entitled under law, $2000. *See id.* at 493-94. Because the county raised the statute of limitations as an affirmative defense, the court applied it, stating that the county treasurer "was charged, as a matter of law," with knowing the salary to which the law entitled him. *Id.* at 494. We accordingly think it highly likely that a court would find here that the judge should have discovered, through the exercise of reasonable diligence, the salary he was entitled to receive under section 25.0005(a) of the Government Code.

The judge's counsel also suggests that the County fraudulently concealed the fact that the County was collecting fees and court costs under section 51.702 of the Government Code but not paying the judge the salary to which he was entitled under section 25.0005(a) of the same code. *See* Judge's Brief, *supra* note 6, at 3. Fraud and the doctrine of fraudulent concealment prevent running of the statute of limitations. *See S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996). Accrual of actions in which fraud or fraudulent concealment occurred is deferred "because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *Id.*

---

[6]*See* Letter from Jason L. Wren & Jeffrey J. Wolf, Wolf+Law PC, to Honorable Greg Abbott, Texas Attorney General, at 2 (June 2, 2005) (on file with Opinion Committee) [hereinafter Judge's Brief].

Whether the County's conduct in this case constitutes fraud or fraudulent concealment is a question requiring an examination of evidence and the resolution of fact questions; it is therefore not amenable to the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0156 (2004) at 10 (stating that fact questions cannot be answered in the opinion process).

## C.    Governmental Immunity

You ask second whether the County is immune from the judge's claim for back pay. *See* Request Letter, *supra* note 1, at 1. Though you refer to "sovereign immunity," your inquiry appears to concern the County's governmental immunity. The terms "sovereign immunity" and "governmental immunity" denote two different concepts:

> Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts.

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (citations omitted).

Immunity comprises two distinct principles: (1) immunity from suit and (2) immunity from liability. *See Travis County v. Pelzel & Assocs.*, 77 S.W.3d 246, 248 (Tex. 2002); *Gendreau v. Med. Arts Hosp.*, 54 S.W.3d 877, 879 (Tex. App.–Eastland 2001, pet. denied). Immunity from liability is an affirmative defense that is waived if a political subdivision does not raise it. *See City of San Benito v. Ebarb*, 88 S.W.3d 711, 720 (Tex. App.–Corpus Christi 2002, pet. denied). Immunity from suit, by contrast, bars a suit against the political subdivision unless the state has expressly consented to suit "in clear and unambiguous language." *Jefferson County v. Bernard*, 148 S.W.3d 698, 700 (Tex. App.–Beaumont 2004, no pet.); *see City of San Benito*, 88 S.W.3d at 720; *cf.* TEX. GOV'T CODE ANN. § 311.034 (Vernon 2005) (directing that a statute may not be construed to waive sovereign immunity "unless the waiver is effected by clear and unambiguous language"). Any ambiguity is "to be resolved in favor of retaining immunity." *Jefferson County*, 148 S.W.3d at 701 (citing *Wichita Falls State Hosp.*, 106 S.W.3d at 697). Thus, for example, section 89.004(a) of the Local Government Code, which prohibits a person from filing suit "on a claim against a county" or a county official "unless the person has presented the claim to the commissioners court and the commissioners court neglects or refuses to pay all or part of the claim," does not constitute an express waiver of the county's immunity. TEX. LOC. GOV'T CODE ANN. § 89.004(a) (Vernon Supp. 2004-05); *see Gendreau*, 54 S.W.3d at 879; *Taub v. Harris County Flood Control Dist.*, 76 S.W.3d 406, 409 (Tex. App.–Houston [1st Dist.] 2001, pet. filed). In this case, you question whether the County is immune from suit.

Neither section 51.702 nor section 25.0005 of the Government Code—nor any other related statute pertaining to a statutory county court judge's salary, *see, e.g.*, TEX. GOV'T CODE ANN. §§ 25.0016, .2511, .2512 (Vernon 2004) (relating generally to excess contributions to the judicial

fund under section 51.702 and specifically to the County Court at Law of Wise County)—clearly and unambiguously waives a county's immunity. The Texas Tort Claims Act, chapter 101 of the Civil Practice and Remedies Code, which waives county immunity in certain circumstances, does not apply here. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001(3)(B), .002 (Vernon 2005) (defining "governmental unit" to include counties; titling chapter 101). Under section 101.021, a governmental unit, including a county, is liable for

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*Id.* § 101.021. Section 101.025 clearly and unambiguously waives immunity "to the extent of liability created by this chapter," and "[a] person having a claim under [chapter 101] may sue the governmental unit for" certain damages. *Id.* § 101.025. In our opinion, a claim for back pay is not a claim for property damage, personal injury, or death and therefore is not within the "liability created by" chapter 101. *See Assoc. Tel. Directory Publ'rs, Inc. v. Five D's Publ'g Co.*, 849 S.W.2d 894, 900 (Tex. App.–Austin 1993, no writ) (stating that the term "property damage" ordinarily refers to damage to tangible property, not economic loss or loss of economic opportunity); *Mokry v. Univ. of Tex. Health Servs. Ctr.*, 529 S.W.2d 802, 804-05 (Tex. Civ. App.–Dallas 1975, writ ref'd n.r.e.) (equating the terms "personal injury" and "bodily injury" in the Tort Claims Act and suggesting that the phrases mean damage to a person's body); *Hartford Accident & Indem. Co. v. Thurmond*, 527 S.W.2d 180, 187-88 (Tex. Civ. App.–Corpus Christi 1975, writ ref'd n.r.e.) (determining that the phrase "personal injury" in the workers' compensation statute refers to harm to a body's physical structure); *see also Casteel v. Crown Life Ins. Co.*, 3 S.W.3d 582, 596 (Tex. App.–Austin 1997) (stating that the phrase "personal injury," as it is commonly understood, does not encompass lost income or economic injury), *rev'd on other grounds*, 22 S.W.3d 378 (Tex. 2000).

Judicial opinions further suggest that governmental bodies are immune from suits for back pay. *See Bell v. City of Grand Prairie*, 160 S.W.3d 691, 693-94 (Tex. App.–Dallas 2005, no pet.) (holding that a trial court did not err in determining that immunity barred appellants' suit against a city for back pay); *City of San Benito*, 88 S.W.3d at 723-24 (holding that immunity bars a suit against a city for lost wages). *But see City of Waco v. Bittle*, 167 S.W.3d 20, 26 (Tex. App.–Waco 2005, pet.

denied) (concluding that a city was not immune from suit seeking to compel the city to comply with a statute requiring it to compensate the appellant for time lost as a result of a suspension).

The judge's counsel contends that governmental immunity does not apply because the County's actions were beyond its authority. *See* Judge's Brief, *supra* note 6, at 4. For a plaintiff to bring the type of suit that does not require a waiver of immunity, the plaintiff must sue an officer or officers in an individual capacity. *See First State Bank of Dumas v. Sharp*, 863 S.W.2d 81, 83 (Tex. App.–Austin 1993, no pet.). You do not ask about and we do not address here a lawsuit against the County's officers in their individual capacities.

## S U M M A R Y

A judge's action for back pay under section 25.0005 of the Government Code is subject to the four-year statute of limitations that section 16.004(a)(3) of the Civil Practice and Remedies Code sets forth. A court likely would find that a judge should have discovered, through the exercise of reasonable diligence, the salary he was due. But whether a particular injury is a type that is inherently undiscoverable is a question requiring the resolution of fact questions that are beyond the scope of the opinion process. In addition, whether the County's conduct in a particular case constitutes fraud or fraudulent concealment is also a question requiring an examination of evidence and the resolution of fact questions.

Governmental immunity bars a suit against a county for back pay brought by a judge who did not receive the compensation to which he was entitled under section 25.0005(a).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee