# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-04-00635-CV

**Texas Department of Protective and Regulatory Services, Appellant**

**v.**

**Dana Lynn, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT**
**NO. GN301974, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING**

### M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the denial of a plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(8) (West Supp. 2004-05). Appellee, Dana Lynn, sued appellant, Texas Department of Protective and Regulatory Services (the Department),[1] for racial discrimination. *See* Tex. Lab. Code Ann. § 21.051 (West 1996). It is undisputed that Lynn filed her charge of discrimination more than 180 days after her termination from employment. *See id.*

---

[1] On February 1, 2004, the legislature changed the name of the former Texas Department of Protective and Regulatory Services to the Texas Department of Family and Protective Services. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 1.11, sec. 40.002, 2003 Tex. Gen. Laws 611, 623.

§ 21.202 (West 1996) (requiring that claims under Texas Commission on Human Rights Act must be filed not later than 180th day after date alleged unlawful employment practice occurred). The Department filed a plea to the jurisdiction, contending that Lynn failed to meet the limitations period because her termination date was the latest possible date on which to commence the running of the statute of limitations, thereby barring her claim and depriving the district court of subject-matter jurisdiction. Lynn argues that either the discovery rule or equitable estoppel principles operated to render her filing timely. The district court denied the plea to the jurisdiction. We will vacate the order of the district court and dismiss for want of jurisdiction.

**BACKGROUND**

On February 7, 2000, the Department hired Dana Lynn as a Statewide Intake Protective Services Specialist I. As an intake specialist, Lynn fielded reports of child abuse on the Department's abuse hotline and entered those reports into the Department's system. Lynn spent approximately eight hours per day typing child abuse report entries into her computer. By September 2000, Lynn was diagnosed with carpal tunnel syndrome, purportedly due to her prolonged typing.

According to evidence that Lynn presented in the district court, in December 2000 Lynn sent a letter to the Regional Program Administrator at the Department, Pam Chick, expressing concerns regarding her supervisor, Jane McCarty. Lynn, who is African-American and female, stated that McCarty was discriminating against her on the basis of her race. Lynn accused McCarty of such behavior because, she alleged, McCarty had commented that she could not believe that Lynn had a masters degree, which Lynn construed as an expression of disbelief that she, as an African-

2

American woman, had obtained an advanced degree. Lynn also cited examples of McCarty yelling at minorities in a demeaning way.

Lynn averred that she then met with Chick to discuss her concerns and asked that Chick transfer her to a different unit. Chick told Lynn to wait approximately three months to request a transfer, at which time Lynn would have completed a year in McCarty's unit. Chick also told Lynn that, if she felt discriminated against, she should talk to a representative from the Equal Employment Opportunity Commission (EEOC). Hours after Lynn's meeting with Chick, McCarty, who had somehow learned about Lynn's accusations of racial discrimination, pulled Lynn into a coworker's office and yelled at her.[2] Lynn stated, "[McCarty] later pointed out I was the only Black person in her unit. She kept asking me if I had a problem 'being the only one.' I told her I wasn't aware I was the only one until she pointed it out, and that I did not have a problem being the only Black in the unit."

Later that day, Lynn approached Pedro Lopez, a Department Human Resource Service Specialist, regarding her discrimination complaint. Lynn told Lopez that she wanted to file a charge with the EEOC, but Lopez told Lynn that there was no basis for her complaint. Lynn continued her work at the Department.

A few months later, in April 2001, Lynn discontinued work at the Department due to her carpal tunnel symptoms after her health care provider, chiropractor Donald McKinley of Texas Pain & Rehabilitation Centers, had restricted her ability to keyboard and prohibited her from performing her data entry tasks at the Department. When McKinley communicated the results of

_____

[2] The record does not reflect how McCarty became aware of Lynn's meeting with Chick.

3

his examination to the Department by telephone, Lynn's supervisors stated that no position existed for Lynn at the Department that did not include typing.

Lynn did not return to work but, instead, used her accrued paid vacation and sick leave, which she exhausted by May 1, 2001.[3]  The Department began carrying her on a Leave Without Pay status.[4]  On May 8, 2001, Lynn notified her supervisor that she had a serious health condition that rendered her unable to perform the essential functions of her job.  On May 22, 2001, the Department informed Lynn that it had designated her medical leave as Family and Medical Leave Act (FMLA) qualifying and that she was entitled to job protection.  *See* 29 U.S.C.A. § 2614 (West 1999).[5]

---

[3]  According to the Department's employee handbook, full-time employees accrue eight hours of sick leave per month.  To use sick leave for a period of more than three continuous working days, an employee must provide a doctor's certification showing the nature of the injury or illness.  The certification should specify any medically-necessary restrictions on the employee's duties, whether the employee is unable to return to work, and when the employee will be able to return to work.

[4]  Employees must exhaust all available sick leave before the Department may place them on Leave Without Pay.  Employees may be approved for extended Leave Without Pay for one to three months if they meet the eligibility criteria, but the Department may not approve more than three months of extended Leave Without Pay in a fiscal year without Executive Director approval.  When an employee incurs approved Leave Without Pay for more than twelve weeks in a twelve-month period, the Department will review the position to determine if there is a business necessity to fill the position without further delay.  If a business necessity exists, the Department may terminate the employee.

[5]  The FMLA entitles eligible employees to a total of twelve work weeks of leave during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions the employee's position.  29 U.S.C.A. § 2612 (West 1999).  Eligible employees who take FMLA leave are entitled, on return from such leave, to be restored by the employer to the position of employment, or an equivalent position, held by the employee when the leave commenced.  *Id*. § 2614.

4

On August 8, 2001, the Department notified Lynn that her twelve-week period of job protection had expired on August 2, 2001. In the notice, the Department also requested that Lynn provide a report from McKinley stating when the Department could expect her to return to work and what duties she would be capable of performing at that time. McKinley provided the Department a work status report he prepared on June 14, 2001. In the report, McKinley stated that Lynn's carpal tunnel syndrome prevented her from returning to work and that he expected Lynn's condition to continue through September 14, 2001. McKinley warned that Lynn's occupation as a data intake specialist and the prolonged typing it entailed would make her condition more severe and difficult to treat, increasing the likelihood that she would suffer permanent damage.[6]

In late August or early September 2001, the human resource staff at the Department held a meeting to discuss Lynn's employment and the expiration of her FMLA protection. At this meeting, the human resource staff decided to recommend Lynn's termination and fill her position. On September 12, 2001, Chick sent a memorandum to the Department's regional director, Susan Thomson, in which she recommended that Lynn be dismissed. Chick stated that the reason for dismissal was Lynn's exhaustion of her leave entitlements and her inability to return to work. In the memorandum, Chick also stated that there existed a critical business necessity to fill Lynn's position due to increased call volume at the Department during that time of the year.

---

[6] However, on August 14, 2001, at the Department's request, Dr. Gary Pamplin examined Lynn, and he determined that Lynn's records did not indicate that she suffered from carpal tunnel syndrome. As a result, Dr. Pamplin determined that Lynn was capable of performing her regular work duties at regular hours.

On October 8, 2001, McKinley sent the Department, at its request, another medical status certification, in which he stated that Lynn's condition would probably continue until January 15, 2002, or longer. McKinley also estimated that Lynn would need three to six months of physical therapy and rehabilitation. On October 9, 2001, Thomson notified Lynn that the Department had decided to terminate her due to the exhaustion of her FMLA leave, as documented in the recommendation from Chick.

From around the time of her termination, Lynn shared an apartment with Marsha Kim Stiles. Like Lynn, Stiles was an intake specialist with the Department and has suffered from carpal tunnel syndrome. Stiles is Anglo. On September 9, 2002, almost a year after her termination, Lynn learned from Stiles that, when Stiles became unable to keyboard as a result of her condition, the Department neither designated her medical leave as FMLA-qualifying nor terminated her. Stiles also informed Lynn that another Anglo intake specialist, Lisa Kanne, had suffered from carpal tunnel syndrome that limited her ability to keyboard, yet the Department had not designated her leave as FMLA-qualifying and did not terminate her. Stiles told Lynn that the Department had offered both Stiles and Kanne non-keyboarding job tasks when their medical conditions so required.

On September 16, 2002, Lynn filed a charge of racial discrimination with the EEOC and the Texas Commission on Human Rights (the Commission)[7] alleging that the Department had forced her to take FMLA leave, refused to accommodate her medical condition, and terminated her—all because she is African-American. The Commission issued its notice of right to file a civil

_____

[7] The duties of the Commission have since been transferred to the Texas Workforce Commission civil rights division. Tex. Lab. Code Ann. § 21.0015 (West Supp. 2004-05).

6

action on May 14, 2003. *See* Tex. Lab. Code Ann. § 21.252 (West 1996). On June 3, 2003, Lynn

filed suit in district court. *See id*. §§ 21.254, .258, .2585, & .259 (West 1996 & Supp. 2004-05). In

response, the Department filed a plea to the jurisdiction and moved for summary judgment, claiming

that Lynn's suit was time-barred because she had failed to file her complaint within 180 days of the

date of the Department's alleged misconduct.[8] *See id*. § 21.202. Lynn's failure to file within the time

limit, the Department argued, deprived the district court of subject-matter jurisdiction. The district

court denied both the Department's plea to the jurisdiction and motion for summary judgment. This

appeal of the denial of the plea to the jurisdiction followed. *See* Tex. Civ. Prac. & Rem. Code Ann.

§ 51.014(8).

**DISCUSSION**

In two issues on appeal, the Department contends that the district court erred in

denying its plea to the jurisdiction because Lynn did not file her charge of race discrimination with

the Commission within 180 days of the Department's alleged misconduct and because the 180-day

filing period of section 21.202 of the labor code is mandatory and jurisdictional, containing no tolling

exceptions. Lynn argues that the filing period should be tolled until the date she first learned from

Stiles that the Department had treated her differently with regard to her carpal tunnel symptoms.

As explained below, we need not reach whether a tolling exception exists under

section 21.202 because, even assuming it did, it would not be available here as a matter of law.

---

[8] The Department offered two dates as the date of the alleged misconduct—Lynn's termination on October 9, 2001, and the date the Department designated Lynn's leave as FMLA-qualifying, May 7, 2001. There is no dispute that Lynn filed her claim more than 180 days after October 9, 2001.

7

**Standard of review**

A plea to the jurisdiction challenges the district court's authority to determine a cause of action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Because the denial of a plea to the jurisdiction is a question of law, we review the district court's finding *de novo*. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). For the purposes of this review, we liberally construe the pleadings in favor of jurisdiction, looking to the plaintiff's intent. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

To invoke a court's authority, a plaintiff must allege facts that affirmatively demonstrate that the court has jurisdiction to hear the cause. *Blue*, 34 S.W.3d at 554. To prevail on a plea to the jurisdiction, the defendant must show an incurable jurisdictional defect apparent from the face of the pleadings, making it impossible for any amendment of the plaintiff's petition to confer jurisdiction on the trial court. *Bybee v. Fireman's Fund Ins. Co.*, 331 S.W.2d 910, 914 (Tex. 1960); *City of San Angelo v. Smith*, 69 S.W.3d 303, 305 (Tex. App.—Austin 2002, pet. denied). Courts must consider evidence when necessary to decide jurisdictional issues. *Miranda*, 133 S.W.3d at 221. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, a district court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228.

**The Commission on Human Rights Act's exhaustion-of-remedies requirement**

An employer commits an unlawful employment practice if he or she discharges an individual or discriminates in any other manner against an individual in connection with the terms, conditions, or privileges of employment because of race. Tex. Lab. Code Ann. § 21.051. Before

seeking a remedy in court, an aggrieved person must first file a complaint with the Commission.[9]

Any such claims must be filed within 180 days after the alleged discrimination occurred:

> (a)  A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.
>
> (b)  The commission shall dismiss an untimely complaint.

*Id*. § 21.202.

The parties do not dispute that Lynn's alleged failure to comply with this 180-day filing requirement implicates the subject-matter jurisdiction of the trial court and can be adjudicated through a plea to the jurisdiction. We acknowledge that, in recent decisions, the supreme court has expressed reluctance to characterize elements or prerequisites of statutory claims as "jurisdictional."[10] However, the statutory requirements addressed in these recent cases are distinguishable from the Commission on Human Rights Act's administrative process, which the

---

[9]  *See* Tex. Lab. Code Ann. § 21.201 (West 1996); *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485, 487-88 (Tex. 1991) (act "establishes a comprehensive administrative review system"); *see also Czerwinski v. UTHSCH*, 116 S.W.3d 119, 121-22 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *Smith v. University of Tex. S.W. Med. Ctr. of Dallas*, 101 S.W.3d 185, 188 (Tex. App.—Dallas 2003, no pet.); *Vincent v. West Tex. State Univ.*, 895 S.W.2d 469, 473 (Tex. App.—Amarillo 1995, no writ); *Stinnett v. Williamson County Sheriff's Dep't*, 858 S.W.2d 573, 576 (Tex. App.—Austin 1993, writ denied).

[10]  *See Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 180-83 (Tex. 2004) (statutory provision requiring condemning entity in condemnation proceeding to state in petition that parties are "unable to agree"on damages was mandatory but not jurisdictional); *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76-77 (Tex. 2000) (plaintiff's failure to establish statutory element of claim did not implicate district court's subject-matter jurisdiction); *see also University of Tex. Med. Branch at Galveston d/b/a John Sealy Hosp. v. Barrett*, 159 S.W.3d 631, 632-33 (Tex. 2005) (declining to decide whether whistleblower act's mandatory administrative claims resolution procedure—which, the court concluded, did not require exhaustion—is jurisdictional).

supreme court has squarely held to be an exhaustion-of-remedies requirement. *See Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485-88 (Tex. 1991).[11] Failure to exhaust administrative remedies is truly jurisdictional in nature: it deprives courts of subject-matter jurisdiction over a claim. *Id*. at 485-86.[12] Thus, unless and until the supreme court departs from its view in *Schroeder* that the Commission on Human Rights Act requires exhaustion of remedies, we will continue to treat the 180-day filing requirement as "mandatory and jurisdictional." *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996).

**Whether section 21.202 was tolled**

Although the text of section 21.202 contains no such language, Lynn contends that it impliedly permits the application of tolling exceptions. The Department disagrees, relying on the supreme court's previous characterization of the filing period as "mandatory and jurisdictional" and cases where our sister courts, relying on that characterization, have rejected the application of equitable tolling concepts. *See DeMoranville,* 933 S.W.2d at 492; *Schroeder*, 813 S.W.2d at 485-86; *Czerwinski v. UTHSCH*, 116 S.W.3d 119, 121-22 (Tex. App.—Houston [14th Dist.] 2002, pet.

---

[11] Lower courts, including this Court, have consistently adhered to this view. *See supra* note 9.

[12] *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Schroeder*, 813 S.W.2d at 485-86; *cf. Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 293-295 (Tex. 2001) (per curiam) (dismissing claim against school district for want of jurisdiction because plaintiff failed to exhaust administrative remedies); *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 595-598 (Tex. 2001) (holding that exhaustion of administrative procedures under chapter 2260 of government code is prerequisite to suit under chapter 107 of civil practice and remedies code); *Texas Dep't of Transp. v. Aer-Aerotron, Inc.*, 39 S.W.3d 220, 220-221 (Tex. 2001) (same); *Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex. 1998) (exhaustion requirement "seeks to assure that the appropriate body adjudicates the dispute—the hallmark of a jurisdictional statute.").

denied) (rejecting application of equitable tolling to age discrimination claim involving late-discovered evidence "because the statutory filing requirements are jurisdictional"); *Guevara v. H.E. Butt Groc. Co.*, 82 S.W.3d 550, 552-53 (Tex. App.—San Antonio 2002, pet denied) (refusing to apply equitable tolling where EEOC allegedly refused wrongfully to accept complaint).

Lynn is somewhat inconsistent with regard to the nature of the tolling concept on which she relies. In the district court, she referred to "the discovery rule" in her response to the Department's plea to the jurisdiction. In her appellate brief, she also mentions interchangeably a concept of "equitable tolling" akin to fraudulent concealment under Texas law. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455-56 (Tex. 1996) (stating that "deferral in the context of fraud or concealment resembles equitable estoppel"). We will assume without deciding that both concepts can apply to section 21.202 and consider their availability here.

The discovery rule postpones the accrual of a cause of action until the plaintiff knew or, through the exercise of reasonable diligence, should have known of the facts giving rise to the cause of action. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). The focus of this tolling concept is the character of the injury giving rise to the claim, not any wrongdoing on the part of the defendant to conceal the injury. *See id*. The discovery rule operates in circumstances in which the nature of the injury is inherently undiscoverable and the evidence of the injury is objectively verifiable. *Id*. An injury is inherently undiscoverable if it is unlikely to be discovered within the prescribed limitations period despite due diligence. *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). All that is required to commence the running of the limitations period is the discovery of the injury and its general cause, not the exact cause in fact and the specific parties responsible for it. *See Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 n.3 (Tex. 1992). Texas courts generally

recognize the discovery rule as a limited exception to statutes of limitations. *Altai,* 918 S.W.2d at 455-56 (refusing to apply discovery rule to toll two-year statute of limitations for misappropriation of trade secret, because such injury is not, by nature, inherently undiscoverable); *see also Horwood,* 58 S.W.3d at 734*; Gibson v. Ellis*, 58 S.W.3d 818, 823 (Tex. App.—Dallas 2001, no pet.)*; Li v. University of Tex. Health Sci. Ctr.*, 984 S.W.2d 647, 651 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

Fraudulent concealment, by contrast, is an equitable doctrine that estops a defendant who concealed his wrongful conduct from asserting the statute of limitations. *Li*, 984 S.W.2d at 653. To show that she is entitled to the estoppel effect of fraudulent concealment, a plaintiff must show that (1) the defendant had actual knowledge of the wrong, (2) a duty to disclose the wrong, and (3) a fixed purpose to conceal the wrong. *Id*. The claimant gets the benefit of deferring the accrual of her cause of action where the facts forming the basis of her injury were concealed. *Altai*, 918 S.W.2d at 455. Limitations begin to run from the date the claimant discovered or, through the exercise of reasonable diligence, should have discovered the fraud. *Id*.; *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 809 (Tex. 1979). This concept of equitable tolling also applies in situations where the plaintiff has been induced or tricked by her employer's misconduct into allowing the statutory period to lapse. *Czerwinski*, 116 S.W.3d at 121-22. As support for applying this equitable tolling concept, Lynn relies on *Oshiver v. Levin, Fishbein, Sedran & Berman* for the proposition that a limitations period is tolled where the defendant "has actively misled the plaintiff respecting the plaintiff's cause of action." *See* 38 F.3d 1380, 1387 (3rd Cir. 1994);[13] *see also*

---

[13] The *Oshiver* court concluded that where a defendant actively misleads the plaintiff regarding the reason for the plaintiff's dismissal, the statute of limitations will not begin to run until

*Czerwinski*, 116 S.W.3d at 121-22 (stating that equitable tolling applies in situations where complainant has been induced or tricked by adversary's misconduct into allowing filing deadline to pass).

**The evidence**

When considering the district court's jurisdiction, we will look at all the evidence in the record. *See Miranda*, 133 S.W.3d at 221. Lynn submitted an affidavit in response to the Department's motion for summary judgment.[14] In her affidavit, Lynn stated that she sent a letter in December 2000 to Chick informing her of allegedly discriminatory behavior by McCarty. McCarty's conduct also caused Lynn to approach a representative from the EEOC to discuss filing a discrimination charge. This affidavit establishes that, as early as December 2000, Lynn had actual knowledge that the Department had engaged in what Lynn contends was racial discrimination. This alleged discrimination occurred well before September 9, 2002, the date Lynn learned from Stiles that the Department had purportedly treated similarly-situated white employees differently than it had treated her and the date Lynn proposes for the date she discovered her injury.

Both the discovery rule and fraudulent concealment will only toll the running of the statute of limitations on Lynn's discrimination claim until Lynn knew, or through reasonable

---

the facts that would support the plaintiff's cause of action are apparent or should be apparent to a person with a reasonably prudent regard for her rights. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1389 (3rd Cir. 1994). However, the court also stated that where a plaintiff's suspicions of wrongful discharge would have been sufficient to lead a reasonable person to further inquire into the reasons for her discharge, the court would not apply equitable tolling. *Id.* at 1388.

[14] The motion for summary judgment presented issues substantially similar to the issues presented in the Department's plea to the jurisdiction.

13

diligence should have known, of the facts giving rise to her cause of action. *See Horwood*, 58 S.W.3d at 734; *Altai*, 918 S.W.2d at 455. Lynn's affidavit demonstrates that she knew in December 2000 that there existed what she contends was racial discrimination at the Department, and she knew by October 2001 that the Department had designated her leave as FMLA-qualifying and had terminated her. At that time, Lynn either knew or reasonably should have known that the designation and her termination may have resulted from further racial discrimination by the Department.

Lynn's affidavit, and the alleged discrimination it details, is sufficient to negate the applicability of the discovery rule, because it shows that, as of the date of her termination, Lynn had discovered her injuries and their general cause. *See Russell*, 841 S.W.2d at 344 n.3. This is all that is necessary to commence the running of the statute of limitations. *Id.* Lynn's injuries could not have been inherently undiscoverable when Lynn admits that she was aware of issues of racial discrimination within the Department. *See Horwood*, 58 S.W.3d at 734. Therefore, the facts of Lynn's case will not support the application of the discovery rule to defer the accrual of her cause of action. *See id.*

Likewise, the documented knowledge of allegedly discriminatory behavior in Lynn's affidavit negates the applicability of the concept of fraudulent concealment or equitable tolling. In December of 2000, Lynn knew of facts forming the basis of her discrimination claim, and therefore we cannot say that the facts forming the basis of her injury were concealed from her. *See Altai*, 918 S.W.2d at 455. Lynn's knowledge of possible discrimination at the Department in 2000 would have put a person of reasonable prudence with regard to her rights on notice that further discrimination might have motivated the Department's decisions to designate her leave as FMLA-qualifying and to terminate her. *See Oshiver,* 38 F.3d at 1389. Lynn's awareness of possible past discrimination

14

would have been sufficient to lead a reasonable person to further inquire into the reasons for her discharge. *See id.* There is no support for tolling limitations on the basis of fraudulent concealment for a claimant from whom the facts giving rise to a claim of racial discrimination were not concealed.

**Statute of limitations**

Because neither the discovery rule exception nor equitable tolling principles apply in this case, the limitations period for asserting Lynn's discrimination claim began running, at the latest, on the date of Lynn's termination, October 9, 2001.[15] Therefore, in order to properly assert her claim, Lynn would have to have filed her complaint with the Commission within 180 days of October 9, 2001. Because Lynn did not file her charge until September 16, 2002, more than 180 days after October 9, 2001, her claim is time-barred. As such, there exists an incurable jurisdictional defect that makes it impossible for any amendment of Lynn's petition to confer jurisdiction on the district court. *See Bybee*, 331 S.W.2d at 914.[16] We therefore find that the district court lacked

---

[15] We assume without deciding that the date of Lynn's termination is the date her cause of action accrued because the date of termination, October 9, 2001, is the latest possible date that the Department could have engaged in discriminatory behavior towards her.

[16] Furthermore, Lynn pled neither of these tolling concepts in the district court, a defect that, standing alone, might have been curable by repleading. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). Both the discovery rule and equitable estoppel are counter-defenses that must be pled by a party that asserts them. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 749-50 (Tex. 1999) (requiring that party asserting fraudulent concealment as affirmative defense to statute of limitations has burden to plead defense and provide sufficient evidence to raise question of fact for each element); *Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 570 (Tex. App.—Austin 2003, no pet.) (requiring that party seeking to avail itself of discovery rule must plead rule, either in original petition or in amended or supplemental petition in response to defendant's assertion of affirmative defense, and bears burden of proving and securing favorable findings thereon). Lynn's pleadings are silent regarding any misconduct or concealment by the Department. *See Oshiver*, 38 F.3d at 1391 n.3 (Refusing to apply equitable tolling doctrine to failure to hire claim "because nowhere in the

15

jurisdiction to hear Lynn's suit and erred in denying the Department's plea to the jurisdiction. We sustain the Department's issues.

_____CONCLUSION

Having concluded that Lynn's cause of action is time-barred, we vacate the district court's denial of the Department's plea to the jurisdiction and dismiss for want of jurisdiction. Our disposition turns solely on our application of the Commission on Human Rights Act's "mandatory and jurisdictional" exhaustion-of-remedies requirement and the 180-day limitations period the legislature has chosen. We express no opinion regarding the merits of Lynn's discrimination claim, much less condone the type of conduct she alleges.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Vacated and Dismissed for Want of Jurisdiction

Filed: August 19, 2005

_____

complaint does Oshiver allege that the law firm misled her, actively or otherwise, with regard to this claim."). The closest Lynn comes to pleading the discovery rule is in stating, "Plaintiff discovered the race-based motive for her termination on September 9, 2002 . . . ." Nevertheless, such a statement falls short of demonstrating that the nature of Lynn's injury, racial discrimination, was such that it was inherently undiscoverable during the limitations period despite her due diligence. *See S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). Lynn's pleadings aver that she did not in fact discover her injury within the limitations period, but they fail to support the contention that she could not have done so.

16